**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES LIFE INSURANCE
CO.,
              *Petitioner-Appellant,*

              v.

SUPERIOR NATIONAL INSURANCE CO.,
SUPERIOR PACIFIC CASUALTY CO.,
CALIFORNIA COMPENSATION
INSURANCE CO., COMMERCIAL
COMPENSATION INSURANCE CO., and
COMBINED BENEFITS INSURANCE CO.,
              *Respondents-Appellees.*

No. 07-55938

D.C. No.
CV-07-00850-VBF
(JTL)

OPINION

Appeal from the United States District Court
for the Central District of California
Valerie Baker Fairbank, District Judge, Presiding

Argued and Submitted
November 19, 2008—Pasadena, California

Filed January 4, 2010

Before: Susan P. Graber and Richard R. Clifton,
Circuit Judges, and Edward F. Shea,* District Judge.

Opinion by Judge Shea

---

*The Honorable Edward F. Shea, United States District Judge for the
Eastern District of Washington, sitting by designation.

**COUNSEL**

Andrew S. Amer and Deborah Lynn Stein, Simpson, Thatcher & Bartlett LLP. Kathleen M. Sullivan (argued), Quinn Emanuel Urquhart Oliver & Hedges LLP, Redwood Shores, California, for the petitioner-appellant.

Margaret M. Grignon (argued), Reed Smith LLP, Los Angeles, California; and Joseph K. Hegedus, Lewis Brisbois Bisgaard & Smith LLP, Los Angeles, California, for the respondents-appellees.

**OPINION**

E. SHEA, District Judge:

We are asked to determine whether an arbitration panel violated the Federal Arbitration Act (FAA), 9 U.S.C. §§ 2-16. The process employed by the arbitration panel, which included an ex parte meeting with panel-retained workers' compensation experts, was unusual; however, after deferentially reviewing the panel's award, we determine that the arbitration process provided the parties with a fundamentally fair arbitration and that the arbitration award rested on a plausible interpretation of the governing arbitration documents. Accordingly, we affirm the arbitration award in favor of Superior National Insurance Companies in Liquidation (SNI-CIL).

### BACKGROUND

U.S. Life contractually agreed to reinsure the workers' compensation risks insured by five California insurers between May 1, 1998, and January 1, 2003. This reinsurance contract contained an arbitration provision. These California insurers later declared bankruptcy and will be referred to as

SNICIL. The California Insurance Commissioner became SNICIL's statutory liquidator.

Ten years ago, on November 29, 1999, U.S. Life requested arbitration, seeking: 1) rescission or reformation of the rein-surance contract because SNICIL misrepresented the reserves during the underwriting process and 2) damages for SNICIL's bad-faith performance. SNICIL agreed to arbitrate, seeking a declaration that the reinsurance contract was valid, a ruling that U.S. Life was to perform its contractual obligations, and damages. The panel, which consisted of an arbitrator appointed by each party and a neutral arbitrator selected by the parties' arbitrators, bifurcated the arbitration proceeding into two phases.[1]

Phase I addressed rescission and reformation claims. After holding extensive hearings, the panel entered a Final Interim Award that found no basis for rescission. The panel, however, reformed the reinsurance contract so that U.S. Life became liable for only 90% of the risks insured by SNICIL's underlying policies because of SNICIL's failure to be forthright during the contract formation period. The panel awarded SNICIL interest on this 90% amount "at a rate equal to the average of the 2 and 5 Year Treasury Notes as posted in the Wall Street Journal."

U.S. Life sought vacatur of the Final Interim Award. The

---

[1]At oral argument, the parties acknowledged that, before the submission of the parties' pre-hearing briefs on February 21, 2006, each party had ex parte contact with its party arbitrator. This is customary in tripartite arbitration panels. *See* American Arbitration Association, *Commercial Arbitration Rules and Mediation Procedures*, Rule 18, *available at* http://www.adr.org/sp.asp?id=22440&printable=true#18 (last checked on Dec. 21, 2009); JAMS, *Arbitrators Ethics Guidelines*, art. X, *available at* http://www.jamsadr.com/arbitration-ethics/ (last checked on Dec. 21, 2009); American Bar Association, *The Code of Ethics for Arbitrators in Commercial Disputes*, canons III(B) & X(c), *available at* http://www.abanet.org/dispute/commercial_disputes.pdf (last checked on Dec. 21, 2009).

district court denied U.S. Life's petition; this court affirmed the district court's decision. *U.S. Life Ins. Co. v. Ins. Comm'r*, 160 Fed. App'x 559 (9th Cir. 2005).

Phase II proceeded to determine whether SNICIL engaged in improper claims handling that resulted in bills to U.S. Life in excess of the amounts due under the reinsurance agreement. A Phase II organizational meeting was held on April 14, 2005. Rather than review each of the 98,901 June 30, 2004 claims, U.S. Life's expert selected 500 of the 12,604 contested claims files for an audit. SNICIL's expert used this same sample to conduct its audit.

Prior to Phase II's evidentiary hearings, SNICIL's party arbitrator advised the parties that he had terminal cancer, but that he wished to continue as an arbitrator. The parties elected to continue with the arbitration proceeding with SNICIL appointing an alternate arbitrator to observe and potentially replace SNICIL's party arbitrator. The parties agreed that Phase II would be governed by Protocols Governing the Presentation of Evidence ("the protocols"). The panel approved the protocols.

In March 2005, the panel listened to the parties' Phase II evidence and arguments for approximately thirteen days.[2] After the hearings, the panel advised the parties that it was unable to reach a decision regarding the quality of SNICIL's claims handling and, more pointedly, U.S. Life's reinsurance contract obligations given the parties' divergent expert opinions. To rectify this "stalemate," the panel advised that it would retain two workers' compensation claims-handling experts ("the reviewers") to review the submitted bills.

The panel and the parties exchanged correspondence dis-

---

[2]On March 21, 2006, during the Phase II hearings, the health condition of SNICIL's party arbitrator forced him to resign. He was replaced by the designated alternate SNICIL party arbitrator.

cussing what review process to use. Ultimately, the panel[3] determined that the following review process would be used: 1) the reviewers would review 162 of the 500-claim sample of the June 30, 2004 claims; 2) the reviewers would meet with the panel for three days (hereinafter, "the ex parte meeting") and no transcript would be prepared of the ex parte meeting; 3) the reviewers would provide their conclusions in writing to the panel and the parties; 4) the parties could submit briefs responding to the reviewers' conclusions; 5) a two-day hearing would be held during which the parties could question the reviewers, under oath, for five hours each as to their qualifications and the reasons for their conclusions, but not as to the ex parte meeting; and 6) the parties could submit post-hearing briefs to the panel. This procedure was used.

On December 6, 2006, the panel issued its Phase II Interim Award, finding that all amounts billed prior to June 30, 2004, were properly due.[4] The panel determined, in addition to the Phase I Final Interim Award interest requirement, that U.S. Life was to disgorge its actual investment earnings on all monies due under the reinsurance agreement as of June 30, 2004. The panel also required U.S. Life to pay post-June 30, 2004 bills within thirty days of billing.

On February 1, 2007, the panel issued its Phase II Interim Final Award, which clarified that the panel's December 6, 2006 ruling

> [did] not change the interest awarded in its Final Interim Award of December 30, 2004, as amended and clarified. Any and all monetary awards for [SNI-CIL] of the excess investment earnings as set forth in this PHASE II INTERIM FINAL AWARD and in

---

[3]It is undisputed that all three arbitrators agreed upon this process.

[4]U.S. Life's party arbitrator disagreed with this interim ruling, along with the subsequent February 2007 interim and final awards; however, he did not issue a separate written decision.

the Phase II Interim Award shall be deemed to be interest or other monetary remedy for US Life's disgorgement of unjust enrichment.

On February 18, 2007, the panel issued its Final Arbitration Award, requiring U.S. Life to pay all bills submitted before December 6, 2006, along with Phase I interest and Phase II disgorgement. Furthermore, U.S. Life was required to pay all post-December 6, 2006 bills within thirty days of receipt.

U.S. Life filed an action in district court to vacate this award. SNICIL answered and also filed a separate action to confirm the award. After consolidating the two actions, the district court upheld the arbitration award. U.S. Life now seeks review.

## *ANALYSIS*

### A.   Standard of Review

When reviewing the district court's confirmation of an arbitration award, the appellate court must accept the district court's findings of fact unless clearly erroneous but decide questions of law de novo. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 947-48 (1995); *Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 730 (9th Cir. 2006); *Employers Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1485 (9th Cir. 1991). The issues before us involve questions of law.

During this de novo review, we were cognizant that arbitration is an encouraged method of dispute resolution and that our review of the arbitration panel's decision is greatly limited. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36-37 (1987); *Schoenduve Corp.*, 442 F.3d at 730.

### B.   Federal Arbitration Act

[1] The FAA, which governs arbitration proceedings, "replace[d] judicial indisposition to arbitration with a 'national

policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts.' " *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 128 S. Ct. 1396, 1402 (2008) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (alterations in original)). Case law recognizes that, in order to provide a relatively expeditious and inexpensive dispute resolution, arbitration is not governed by the federal courts' strict procedural and evidentiary requirements. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985); *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003) (en banc). Therefore, when interpreting and applying the FAA, we are mindful not to impose the federal courts' procedural and evidentiary requirements on the arbitration proceeding; rather, our responsibility is to ensure that the FAA's due process protections were afforded.

**[2]** Section 10 of the FAA sets forth grounds to vacate an arbitration award. In March 2008, the Supreme Court resolved a circuit conflict and ruled that § 10 lists the exclusive grounds for vacating an arbitration award. *Hall St. Assocs.*, 128 S. Ct. at 1403. Section 10(a) provides:

> In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> > (1) where the award was procured by corruption, fraud, or undue means;
> >
> > (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> >
> > (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing

to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Section 10(a)'s limited grounds are "designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures." *Kyocera Corp.*, 341 F.3d at 998. The burden of establishing grounds for vacating an arbitration award is on the party seeking it. *See Employers Ins. of Wausau*, 933 F.2d at 1489.

## C.   9 U.S.C. § 10(a)(3) Misconduct

U.S. Life contends that, by closing the meeting of the panel with the reviewers, the panel refused to hear pertinent and material evidence regarding the appropriateness of SNICIL's claims handling.[5] Although an ex parte meeting between an arbitrator and a neutral expert is not a routine arbitration practice,[6] the panel had authority to adopt its own rules of proce-

---

[5]SNICIL contends that U.S. Life waived the ability to object to the panel's procedure, but U.S. Life's spring 2006 emails sufficiently articulated its objection. *See Avis Rent A Car Sys., Inc. v. Garage Employees Union*, 791 F.2d 22, 26 (2d Cir. 1986); *cf. Fidelity Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1313 (9th Cir. 2004) (ruling that failure to raise issue with arbitrator results in waiver of objection).

[6]We deem it non-routine because the arbitration ethical codes promulgated by the American Bar Association, the American Arbitration Association, the National Academy of Arbitrators, and JAMS do not set forth procedures for ex parte contacts with a neutral expert. *See sources cited supra* n.1; National Academy of Arbitrators, *Code of Professional Responsibility for Arbitrators of Labor-Management Disputes*, *available at* http://www.naarb.org/code.html.

dure and it did.**[7]** Our review of the record leads us to conclude that the panel did not "refus[e] to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). Before explaining the basis for this conclusion, we note that the parties disagree as to whether § 10(a)(3) requires U.S. Life to show prejudice as a result of the panel's alleged refusal to hear "evidence pertinent and material to the controversy."

**[3]** Our prior FAA cases have not directly interpreted the text of § 10(a)(3). In *Employers Insurance of Wausau*, 933 F.2d at 1490, an FAA case, though we did not explicitly reference § 10(a)(3), we addressed the argument that a panel's refusal to admit certain evidence was misconduct necessitating vacatur. There we said:

> National has neither argued nor demonstrated that this evidentiary ruling influenced the outcome of the arbitration. Yet a showing of prejudice is a prerequisite to relief based on an arbitration panel's evidentiary rulings. *See, e.g., Burchell v. Marsh*, 58 U.S. (17 How.) 344, 350, 15 L.Ed. 96 (1854) (to warrant reversal because of an arbitrator's mistake in the conduct of the hearing, party must show that "if it had not happened, [the arbitrator] should have made a different award"); [*Mut. Fire, Marine & Inland Ins. Co. v. Norad Resins. Co.*], 868 F.2d [52, 57 (3d Cir. 1989)]; *Hoteles Condado* [*Beach, La Concha & Convention Ctr. v. Union de Tronquistas Local 901*], 763 F.2d [34, 40 (1st Cir. 1985)]; *accord Misco*, 484 U.S. at 40, 108 S.Ct. at 371 (vacatur appropriate only if refusal to hear evidence amounted to affirmative misconduct). Consequently, even were the excluded evidence relevant, National still is not entitled to

---

**[7]***See, e.g., Employers Ins. of Wausau*, 933 F.2d at 1485 (holding that a panel with authority could adopt rules of procedure permitting contact between a party and its chosen arbitrator until the hearing concluded and the deliberation began).

vacatur because of its lack of evidence of prejudicial impact.

*Id.*[8]

[4] Section 10(a)(3) provides:

[An arbitration award may be vacated:]

where the arbitrators were guilty [(1)] of misconduct [(a)] in refusing to postpone the hearing, upon sufficient cause shown, or [(b)] in refusing to hear evidence pertinent and material to the controversy; or [(2)] of any other misbehavior by which the rights of any party have been prejudiced[.]

While an argument can be made that this text is ambiguous given its language and punctuation, we need not resolve this textual ambiguity, if any, for two reasons. First, we conclude that the phrase "refusing to hear evidence pertinent and material to the controversy" necessarily implies prejudice to the rights of a party, without regard to the final catch-all phrase.[9] Second, we hold that U.S. Life failed to establish that the panel's refusal to let the parties participate in or question the neutral experts about the ex parte meeting discussion constitutes a refusal to hear pertinent and material evidence. It was only after the panel listened to, and considered, the parties' experts' opinions and other evidence that the panel determined it needed additional information to resolve the Phase II dispute: U.S. Life's obligations under the reinsurance contract. The panel advised the parties of its dilemma and deter-

---

[8]The broad principle of *Burchell* cited is limited by *Hall Street Associates*, which held "that the FAA confines its expedited judicial review to the grounds listed in 9 U.S.C. §§ 10 and 11." 128 S. Ct. at 1408.

[9]We previously held "a showing of prejudice is a prerequisite to relief based on an arbitration panel's evidentiary rulings." *Employers Ins. of Wausau*, 933 F.2d at 1490.

mined what process to use only after receiving input from counsel through extensive and detailed correspondence. The process employed ensured due process by allowing the parties to present their respective arguments regarding the reviewers' conclusions by 1) reviewing the written conclusions, 2) submitting briefing addressing these conclusions, 3) questioning the reviewers about their qualifications and conclusions, and 4) submitting post-hearing briefing.[10] Although the parties were not privy to what occurred during the ex parte meeting, the panel gave the parties ample opportunity to discover and critique the reviewers' conclusions.

[5] Contrary to U.S. Life's assertion, this process allowed the parties to present material evidence because the parties were allowed to address why the reviewers' conclusions were incorrect. Accordingly, the panel gave each of the parties to the dispute an "adequate opportunity to present its evidence and arguments." *Sunshine Moving Co. v. United Steelworkers of Am.*, 823 F.2d 1289, 1295 (9th Cir. 1987). Arbitrators enjoy "wide discretion to require the exchange of evidence, and to admit or exclude evidence, how and when they see fit." *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1444 (11th Cir. 1998). The panel appropriately exercised this wide discretion; there was no panel misconduct.

This case is not similar to the arbitral misconduct in *Gulf*

---

[10]The employed process is consistent with that suggested by one scholar:

> Should expert testimony be needed, the arbitrators might call such witness on their own initiative. . . . [I]f outside investigation, consultation, and conscious use of an arbitrator's expert knowledge is permitted, the arbitrators could be required to so inform the parties of the information so acquired before the award is made, thus enabling answer, cross-examination, rebuttal, or the submission of additional evidence as the situation may require.

William R. Berkman, Comment, *Arbitrators' Ex Parte Consultations and Investigations*, 44 Cal. L. Rev. 899, 908 (1956).

*Coast Industrial Workers Union v. Exxon Co., USA*, 70 F.3d 847 (5th Cir. 1995), where the arbitrator misled a party into believing that evidence was admitted, but then ruled against the party because it failed to present evidence on the very point to which the excluded evidence was central. Nor is this case similar to the arbitral misconduct in *Teamsters, Chauffeurs, Warehousemen and Helpers, Local Union No. 506 v. E.D. Clapp Corp.*, 551 F. Supp. 570, 578 (N.D.N.Y. 1982), where the party was not given an opportunity to complete its presentation of proof prior to the arbitration decision. Here, the panel allowed each party the opportunity to complete its presentation by submitting a brief and participating in the hearing.

We acknowledge that the panel clearly discussed pertinent Phase II issues with the reviewers. Therefore, this case is unlike *Lefkovitz v. Wagner*, where the Seventh Circuit determined it was unclear whether the arbitrator and an accounting firm discussed ex parte a pertinent overpayment issue. 395 F.3d 773, 779 (7th Cir. 2005). Yet, the impact of the panel's ex parte meeting with the reviewers was mitigated by the notice, extensive correspondence, and more inclusive procedures. The extensive correspondence reflects that the panel's intent was to accord due process—and it did. The panel did not engage in misconduct.

**[6]** We recognize that "[e]*x parte* evidence to an arbitration panel that disadvantages any of the parties in their rights to submit and rebut evidence violates the parties' rights and is grounds for vacation of an arbitration award." *Pac. Reins. Mgmt. Corp. v. Ohio Reins. Corp.*, 935 F.2d 1019, 1025 (9th Cir. 1991). However, as set forth above, U.S. Life failed to establish that the panel refused to hear material evidence. Accordingly, U.S. Life's request to vacate under § 10(a)(3)'s second prong is denied.

### D.   9 U.S.C. § 10(a)(3) Prejudicial Misbehavior

U.S. Life alternatively argues it was unable to respond to evidence presented against it by the reviewers and therefore

the panel's ex parte meeting and cross-examination limitation constituted § 10(a)(3) misbehavior prejudicing U.S. Life.

**[7]** As noted above, an arbitration award may be vacated "where the arbitrators were guilty . . . of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). U.S. Life relies on the Fifth Circuit's ruling that " '[a]rbitrators cannot conduct ex parte hearings or receive evidence except in the presence of each other and of the parties, unless otherwise stipulated.' " *Totem Marine Tug & Barge, Inc. v. N. Am. Towing, Inc.*, 607 F.2d 649, 653 (5th Cir. 1979) (quoting *In re Katz*, 187 N.Y.S.2d 511, 518 (N.Y. Spec. Term 1959)). The Fifth Circuit's prohibition is too broad, especially in light of the Supreme Court's pro-arbitration stance in *Hall Street Associates*, because the FAA does not expressly prohibit ex parte contact. Ex parte conduct by an arbitration panel requires vacatur of an award *only* if the ex parte contact constitutes misbehavior that prejudices the rights of a party. *See Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union AFL-CIO, CLC, Local 182B v. Excelsior Foundry Co.*, 56 F.3d 844, 846 (7th Cir. 1995) ("An ex parte conduct is not an automatic ground for invalidating" an arbitration award.).

**[8]** U.S. Life relies upon *Totem Marine*. 607 F.2d at 651. *Totem Marine* is distinguishable. There, the arbitrators contacted a party to obtain a critical damages figure and then did not allow the other party to respond to this damages figure. Here, the ex parte contact was not with a party, but with neutral experts. Further, both parties were aware of the ex parte contact, submitted suggestions as to the process to be used, and had the opportunity to contest the reviewers' conclusions.

Unlike arbitration by one person, the parties each chose an arbitrator; those two then chose the umpire. Therefore, the panel presented far less risk of prejudicial misbehavior than if one arbitrator was used, particularly given the extensive evidence of its efforts to provide due process to both parties

to this protracted and expensive dispute resolution. The parties did not specifically stipulate to the ex parte meeting, but the parties did agree to allow the panel to "adopt such other processes and procedures as it deems fair and expedient to resolve issues before it to the extent that the issues are not expressly or implicitly addressed by these Protocols." The protocols did not expressly or implicitly address what procedure or process was to be used if the panel was unable to reach a decision as to U.S. Life's reinsurance contract obligations. The parties were informed of the "stalemate"; after discussions with counsel, the panel unanimously determined that it would hold an ex parte meeting with the reviewers, the reviewers' written conclusions would be shared, pre- and post-hearing briefing would be allowed, and questions regarding the reviewers' qualifications and conclusions would be permitted. Because of the broad authority granted by the protocols to the panel, we hold that this process does not constitute misbehavior. The correspondence between the panel and the parties reflects that the panel's goal was to resolve the dispute in a relatively efficient manner while ensuring that the parties received due process. It is noteworthy that U.S. Life's party arbitrator agreed to this process and that he did not mention arbitral misconduct or misbehavior in his dissent.

Indeed, the parties were not prejudiced by the process. While the Phase II arbitration decision was not in U.S. Life's favor, U.S. Life failed to establish that it was denied an opportunity to present its case or to contest SNICIL's evidence or the reviewers' conclusions. *See Mut. Fire*, 868 F.2d at 57 ("[M]ere assertion by appellants that the arbitrators used information obtained ex parte in order to render their decision . . . and to assess the credibility . . . is not enough, in our view, to establish the requisite prejudice necessary for this court to vacate the arbitrator's award.").

**[9]** "In short, perhaps [U.S. Life] did not enjoy a perfect hearing; but it did receive a fair hearing. It had notice, it had the opportunity to be heard and to present relevant and mate-

rial evidence, and the decisionmakers were not infected with bias." *Employers Ins. of Wausau*, 933 F.2d at 1491. For the above reasons, U.S. Life failed to establish that the ex parte meeting and subsequent process constituted misbehavior to its prejudice as required by § 10(a)(3)'s last prong.

### E.   Arbitration Award

[10] Section 10(a)(4) allows a court to vacate an arbitration decision if the "arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). " '[A]rbitrators exceed their powers . . . not when they merely interpret or apply the governing law incorrectly, but when the award is completely irrational, or exhibits a manifest disregard of law.' " *Schoenduve Corp.*, 442 F.3d at 731 (quoting *Kyocera Corp.*, 341 F.3d at 997). An arbitrator does not exceed its authority if the decision is a "plausible interpretation" of the arbitration contract. *Employers Ins. of Wausau*, 933 F.2d at 1486 (quoting *Pac. Motor Trucking Co. v. Auto. Machinists Union*, 702 F.2d 176, 177 (9th Cir. 1983)) (per curiam). Accordingly, the court must defer to the arbitrator's decision "as long as the arbitrator . . . even arguably constru[ed] or appl[ied] the contract." *Misco*, 484 U.S. at 38; *see also Teamsters Local Union 58 v. BOC Gases*, 249 F.3d 1089, 1093 (9th Cir. 2001); *New Meiji Market v. United Food & Commercial Workers Local Union # 905*, 789 F.2d 1334, 1335-36 (9th Cir. 1986).

U.S. Life argues that the panel exceeded its authority by requiring U.S. Life to pay "interest" in excess of the Phase I award, pay all tendered bills, and pay all future bills within thirty days.[11] For the reasons given below, the panel's deci-

---

[11]U.S. Life also argues that the district court erred in declining to find the February 18, 2007 award void under the *functus officio* doctrine. The *functus officio* doctrine provides that an arbitration panel is without authority to reconsider an issue once the panel issued a final decision on that issue. *See McClatchy Newspapers v. Cent. Valley Typographical Union No. 46*, 686 F.2d 731, 734 (9th Cir. 1982). The title of the February 1, 2007 Phase II *Interim* Final Award belies the argument that the February 1, 2007 award was final. (Emphasis added.) Accordingly, the February 18, 2007 award is not void under the *functus officio* doctrine.

sions were plausible interpretations of its authority under the reinsurance contract's arbitration agreement, the arbitration demand submissions, and the protocols; accordingly, the panel did not exceed its authority.

### 1.  *Disgorgement of investment income*

[11] The panel's authority extends to issues raised both explicitly and implicitly by the reinsurance contract and the arbitration demand submissions. *See Schoenduve Corp.*, 442 F.3d at 732-33; *see also Am. Postal Workers Union AFL-CIO, Milwaukee Local v. Runyon*, 185 F.3d 832, 835 (7th Cir. 1999). The arbitrator's interpretation of the scope of the issue must be upheld so long as it is rationally derived from the parties' submission. *Schoenduve Corp.*, 442 F.3d at 733. The panel's understanding of its scope of authority is entitled to the "same level of [great] deference as [its] determination on the merits." *Schoenduve*, 442 F.3d at 733; *see also Am. Postal Workers Union*, 185 F.3d at 835.

U.S. Life invoked its right to arbitrate under the reinsurance contract's[12] broad arbitration provision: "As a condition precedent to any right of action hereunder, in the event of any dispute or difference of opinion hereafter arising with respect to this Contract, it is hereby mutually agreed that such dispute or difference of opinion shall be submitted to arbitration." SNICIL in its answer asked the panel to "direct [U.S.] Life to perform fully all of its obligations thereunder." U.S. Life did not object to SNICIL's request and itself asked the panel to award "such other and further relief as the [p]anel shall deem just and proper."

[12] U.S. Life argues that the panel's broad arbitration

---

[12]The reinsurance contract's arbitration section required the arbiters to "consider this Contract as an honorable engagement rather than merely as a legal obligation," relieved them "of all judicial formalities," and permitted them to "abstain from following the strict rules of law."

authority was limited by the Phase II protocols. We agree. The panel's authority is determined not only by the reinsurance contract and the arbitration demand submissions, but also by the stipulated-and-panel-approved protocols. These protocols stated, "Phase II shall be governed by 'law of the case,' meaning that no issue decided by the Panel, as presently constituted, will be revisited if the Panel is reconstituted . . . . [T]he 'law of the case' means that all prior deliberations and decisions are binding on the alternate arbitrator."[13]

**[13]** U.S. Life contends that the Phase II award deviated from the Phase I interest award and, therefore, the panel exceeded its Phase II authority. We disagree. The Phase I Final Interim Award stated:

> Accrued Interest shall be paid on overdue balances. A balance properly due shall be considered overdue if not paid within sixty (60) days of the end of the month for which the account giving rise to the balance was rendered. Interest on the overdue balances shall be payable at a rate equal to the average of the 2 and 5 Year Treasury Notes as posted in the Wall Street Journal.

The December 6, 2006 Phase II Interim Award not only required U.S. Life to pay SNICIL the Phase I above-calculated interest, but also required U.S. Life to disgorge investment income in excess of the calculated interest.[14] At first glance, this Phase II "interest" award appears at odds with the Phase I interest award, but it is not. The Phase I inter-

---

[13]"Law of the case" has a specific meaning in our case law. *See Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990). But the parties put that phrase into quotation marks and then defined it. In these circumstances, the arbitration panel plausibly used the protocols' special definition, rather than a case-law definition.

[14]"Disgorgement" means "[t]he act of giving up something (such as profits illegally obtained) on demand or by legal compulsion." *Black's Law Dictionary* 501 (8th ed. 2004).

est award provided interest to SNICIL for its contractual right of recovery. Phase II addressed different issues—the parties' claims-handling arguments; therefore, the Phase II "interest" award is a disgorgement award for U.S. Life's delayed payment. The panel's February 18, 2007 decision emphasized that its disgorgement award was imposed to prevent unjust enrichment and did not affect the Phase I interest calculation. Therefore, the disgorgement award plausibly does not conflict with the protocols' "law of the case."

[14] The panel's determination that disgorgement was an appropriate remedy for U.S. Life's delay in payment is also a plausible interpretation of its scope of authority and its broad power to fashion appropriate remedies. *See Yasuda Fire & Marine Ins. Co. of Europe v. Cont'l Cas. Co.*, 37 F.3d 345, 351 (7th Cir. 1994). The arbitration demand submissions granted the panel the authority to award any relief it deemed just and proper. The panel plausibly determined the disgorgement of investment income in excess of calculated interest was necessary to ensure that U.S. Life fully performed its obligations under the reinsurance contract. Accordingly, U.S. Life failed to establish that vacatur is appropriate on this basis under § 10(a)(4).

2.  *Amounts awarded on bills tendered between June 30, 2004, and December 6, 2006*

[15] On February 18, 2007, in addition to requiring U.S. Life to pay all June 30, 2004 bills, the panel awarded amounts due on bills tendered between June 30, 2004, and December 6, 2006. U.S. Life contends that these bills were not included in the issues submitted to the panel for arbitration. We disagree. As previously mentioned, U.S. Life did not object to SNICIL's request that the panel "direct U.S. Life to perform fully all of its obligations" under the reinsurance contract. It was a plausible interpretation of the reinsurance contract, arbitration demand submissions, and protocols that the panel could issue a decision addressing U.S. Life's obligations

under the reinsurance contract after June 30, 2004. The panel plausibly understood that the June 30, 2004 bills were used for discovery purposes to allow the parties to present their "global" claims-handling arguments and to assist the panel in resolving these global issues; the panel then plausibly applied their global rulings to post-June 30, 2004 bills. Accordingly, U.S. Life failed to establish that the panel exceeded its authority by requiring U.S. Life to pay the tendered bills; vacatur is not appropriate under § 10(a)(4).

### 3.  *Future Bills*

Lastly, U.S. Life asserts that the panel exceeded its authority by requiring U.S. Life to pay future bills within thirty days of submission, arguing that this requirement is impractical and violates Article XV.B. of the reinsurance contract, which gives U.S. Life the right to verify the accuracy of SNICIL's claim. SNICIL acknowledges that U.S. Life has a verification right, but argues this is a separate and distinct right from its audit right.

The two reinsurance contract provisions at issue are Article XV and Article XVIII. Article XV.B, titled "Reports and Remittances," states:

> Within 45 days after the end of each month, [SNICIL] shall report to [U.S. Life]:
>
> 1.  Ceded gross premiums for the month, including disbursement of the dividends and return premiums, if any;
>
> 2.  Ceding commission thereon;
>
> 3.  Ceded losses and loss adjustment expense paid during the month;
>
> 4.  Ceded unearned premium and ceded outstanding loss reserves as of the end of the month.

The positive balance of (1) less (2) less (3) shall be remitted by [SNICIL] with its report. *Any balance shown to be due [SNICIL] shall be remitted by [U.S. Life] as promptly as possible after receipt and verification of [SNICIL]'s report.* It is understood that premium hereunder is payable as received by [SNICIL] on monthly billed policies.

(Emphasis added.) Article XVIII provides U.S. Life with access to SNICIL's records and allows U.S. Life to inspect "all books, records and papers of [SNICIL] in connection with any reinsurance hereunder."

**[16]** We hold that the panel did not exceed its authority by requiring U.S. Life to pay a tendered bill within thirty days of receipt because a conclusion that U.S. Life's Article XVIII audit right is independent of its Article XV obligation to pay a bill "as promptly as possible after receipt and verification" is a plausible interpretation of the reinsurance contract. The panel plausibly interpreted Article XV's verification right as not being a right to verify claims but as being a right to verify the arithmetic done by SNICIL in its bill report. Having experience in the insurance field, the panel could have determined that it was practical for U.S. Life to receive and verify SNICIL's Article XV.B report within thirty days. The panel's reading of the reinsurance contract need not be correct; rather, it must " 'draw[ ] its essence' " from the terms of the contract. *Misco*, 484 U.S. at 36 (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). The panel's decision did so. For this reason, vacatur under § 10(a)(4) is inappropriate.

## *CONCLUSION*

**[17]** We affirm the district court's decision confirming the panel's Phase II arbitration award in favor of SNICIL.

**AFFIRMED.**