# United States Court of Appeals

### For the Eighth Circuit

_____

No. 17-2447

_____

DFM Investments, LLC

*Plaintiff - Appellant*

v.

Brandspring Solutions, LLC

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: June 13, 2018
Filed: July 25, 2018
[Unpublished]

_____

Before GRUENDER, ERICKSON, and GRASZ, Circuit Judges.

_____

PER CURIAM.

DFM Investments challenges an arbitration decision in favor of Brandspring Solutions. In 2011, Brandspring purchased DFM. The Asset Purchase Agreement ("APA") provided for possible "earn-out" payments in the event the "Total Gross Margin" increased above a certain threshold in the two one-year periods after the sale. In the first year, Brandspring released the earn-out payment after concluding that

sales met the threshold. In the second year, Brandspring declined to release the earn-out payment after concluding that the threshold was not met.

DFM disputed this conclusion and claimed that Brandspring was undercharging certain Brandspring-affiliated companies to reduce the gross margin. According to DFM, this alleged underbilling violated the APA's requirement that the billing rates be calculated without deviation from "historical payment practices." DFM initiated the arbitration processes described in the APA and submitted the dispute to the "Independent Accounting Firm" Wipfli LLP. The arbitrator was Dan Szidon ("Szidon" or "the arbitrator"), a partner and certified public accountant at Wipfli.

After reviewing some material related to the dispute, Szidon told both parties that he doubted that DFM's claim had merit and that "further detailed examination of records on my part would not likely result in a finding that any additional amounts were owed by Brandspring." Despite this assessment, Szidon agreed to conduct further review and hear additional arguments. Two years later, after receiving more material and hearing additional arguments by DFM, he reaffirmed his initial conclusion. He wrote that he had "reservations" regarding whether DFM could establish underbilling as an "accounting matter," because "billing rates are inherently judgmental and vary greatly depending upon numerous circumstances." But "even if" billing rates could be "objectively determined" and were "within the scope of the dispute provision of the APA," he added, "substantial revisions to the rates used would be needed to even begin to impact the amounts owed." Based on Szidon's professional judgment and the work already performed, he concluded that under no circumstances would Brandspring owe additional payments to DFM and that DFM's claim therefore lacked merit. He ended his decision: "[O]ur role in the resolution of the Dispute is concluded. We do not believe there should be any revision to the amounts originally calculated by the Buyer and provided to the Seller pursuant to the APA."

DFM brought this action in Minnesota state court challenging the arbitrator's decision, and Brandspring removed the case to federal court based on diversity jurisdiction. The district court[1] denied DFM's request to vacate the decision and appoint a new arbitrator, and it confirmed the arbitration decision. DFM appealed.

We review the district court's legal conclusions *de novo* and its fact findings for clear error, and we afford "an extraordinary level of deference" to the underlying arbitration award. *McGrann v. First Albany Corp.*, 424 F.3d 743, 748 (8th Cir. 2005). We "will confirm the arbitrator's award even if we are convinced that the arbitrator committed serious error, so long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Id.* In conducting our review, we will apply the standards set forth in the Federal Arbitration Act ("FAA").[2]

DFM advances two arguments on appeal. DFM's first argument concerns the district court's understanding of the arbitrator's decision. In particular, DFM claims that the district court mischaracterized the arbitrator's findings. In relevant part, the district court wrote: "Szidon interpreted the APA to conclude that . . . the APA's requirement that Brandspring calculate the Gross Margin without 'deviation from historical payment practices' did not require Brandspring to charge any particular hourly rate." For his part, Szidon wrote that he had "reservations" about finding underbilling by Brandspring because "it is not immediately clear to what extent (if any) billing rates is an 'accounting matter' since billing rates are inherently

---

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

[2]The parties are agnostic on the question whether the FAA or Minnesota Arbitration Act governs the dispute. Because no party contends—and we see no reason why—the analysis would differ in this case under the two statutes, we will assume without deciding that the FAA governs.

judgmental and vary greatly depending upon numerous circumstances." DFM emphasizes that Szidon expressed only "reservations" and, in DFM's view, offered no "definitive indication" on the propriety of analyzing billing rates under the APA. According to DFM, the district court therefore erred in treating the reservations as a rationale for the arbitrator's decision.

We fail to see how the district court erred or, for that matter, why any error would warrant relief. The district court was correct to conclude that Szidon believed the APA to "not require Brandspring to charge any particular hourly rate," because, to use Szidon's words, "billing rates are inherently judgmental." Although Szidon referred to certain views as "reservations"—a qualifier that the district court twice quoted and clearly understood—those reservations concerned an interpretation of the APA. Indeed, he offered the interpretation to explain his decision in favor of Brandspring. Yet even if Szidon's interpretation was not sufficiently "definitive" to supply a basis for upholding the award, DFM does not advance the same challenge to Szidon's alternative rationale: that "even if" the billing rates could be "objectively determined" and were "within the scope of the dispute provision of the APA," the alleged underbilling, as supported in the proffered documents, would be insufficient to find for DFM.[3] Reversing the district court based on its characterization of Szidon's decision is therefore unwarranted.

DFM's second argument focuses on the arbitration decision itself. Specifically, DFM argues that Szidon refused to consider material evidence. Under the FAA, we may vacate an arbitrator's decision where the arbitrator was "guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy," 9 U.S.C.

---

[3]DFM suggests that the district court overlooked Szidon's alternative rationale, but it did not. The district court described the rationale in its fact section. And in its analysis section, the district court wrote, among other things, that Szidon "considered DFM's arguments and decided to reject them," including arguments related to the "even-if" point.

-4-

§ 10(a)(3), but we "have absolutely no authority to reconsider the merits of an arbitration award, even when the parties allege the award rests on factual errors or on a misinterpretation of the underlying contract," *McGrann*, 424 F.3d at 748.

Contrary to DFM's assertions, the arbitrator did not refuse to consider material evidence. Instead, he concluded that certain additional evidence was not material. He wrote: "Then and now, we are unconvinced that [DFM's] claim has any merit and as a consequence we are foregoing any further work as we do not feel it would change our opinion in this matter." This decision was a reasoned one. Even putting aside Szidon's view that "billing rates are inherently judgmental" and that DFM's claim of underbilling therefore necessarily failed, Szidon also concluded that revising the rates based on DFM's proffered documents would be insufficient to find for DFM in any event. Szidon reached this conclusion in his professional judgment, after assessing the evidence and hearing DFM's arguments. DFM is dissatisfied with the quality and extent of Szidon's analysis, but such dissatisfaction does not support vacatur. *See id.* Indeed, absent exceptional circumstances not present here, we cannot vacate an arbitration award "based on the arbitrator's determination of the relevancy or persuasiveness of the evidence submitted by the parties." *Swink & Co. v. Norris & Hirschberg, Inc.*, 845 F.2d 789, 790 (8th Cir. 1988) (per curiam). Szidon's decision to forgo analyzing the additional evidence, made as part of his "review" and "final determination" on the earn-out dispute under the APA, thus does not provide grounds for vacating the award.

DFM's responses are unpersuasive. It cites two out-of-circuit cases in its reply brief for the proposition that the arbitrator's actions here warrant relief. *See Teamsters, Local Union 506 v. E.D. Clapp Corp.*, 551 F. Supp. 570 (N.D.N.Y. 1982), *aff'd sub nom. Teamsters v. Ed Clapp Corp.*, 742 F.2d 1441 (2d Cir. 1983); *Gulf Coast Indus. Workers Union v. Exxon Co., USA*, 70 F.3d 847 (5th Cir. 1995). But those cases did not involve, as here, an arbitrator's reasoned decision to forgo analyzing additional material. *See, e.g.*, *Teamsters*, 551 F. Supp. at 574 (noting that,

according to one account, the arbitrator "stood up and stated, '[expletive deleted] it, I quit, I'm prejudiced, I never wanted these cases, they are making a patsy out of me'" (alteration in original)); *U.S. Life Ins. Co. v. Superior Nat'l. Ins. Co.*, 591 F.3d 1167, 1175 (9th Cir. 2010) (distinguishing *Teamsters* and *Gulf Coast Industries*). DFM also emphasizes that in Szidon's decision, he noted that he had "not taken any action" on (and apparently was not paid for) "possible additional testing" that he had proposed two years prior to his final decision. According to DFM, this acknowledgment establishes that the arbitrator refused to consider the evidence submitted in the intervening years. But DFM over-reads the statement. The arbitrator did not state that he declined to consider the additional evidence; he merely stated that he declined to perform particular testing. In any case, an arbitrator's reasoned decision to forgo analyzing additional evidence does not, without more, provide grounds for vacating the decision. *See Swink*, 845 F.2d at 790. To hold otherwise would amount to reconsidering the merits of the award—something we have "no authority" to do. *McGrann*, 424 F.3d at 748.[4]

For the foregoing reasons, we affirm.

———————————————————

———————————————————

[4]DFM similarly argues that Szidon's supposed unwillingness to act as an arbitrator supports its position under the FAA. But this argument fails for the same reasons the refusal-to-consider-evidence argument fails. Szidon made a reasoned decision not to conduct further review; he was not unwilling to act as an arbitrator.