
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| COSTCO WHOLESALE CORPORATION, | No.   19-55451 |
| Petitioner-Appellant, | D.C. No. 3:18-cv-01953-AJB-BLM |
| v. | |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL NO. 542, | MEMORANDUM* |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Southern District of California
Anthony J. Battaglia, District Judge, Presiding

Argued and Submitted June 1, 2020
Pasadena, California

Before:  RAWLINSON and N.R. SMITH, Circuit Judges, and KORMAN,**
District Judge.
Dissent by Judge N.R. SMITH

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Edward R. Korman, United States District Judge for
the Eastern District of New York, sitting by designation.

Costco Wholesale Corp. (Costco) appeals the district court's judgment confirming an arbitration award in favor of the International Brotherhood of Teamsters, Local No. 542 (the Union), and denying Costco's petition to vacate the award. A member of the Union, James Diaz, challenged his termination for selling drugs on Costco premises. The parties participated in arbitration proceedings as provided in the collective bargaining agreement. Following the presentation of evidence, matters took a bizarre turn.

We are fully aware of the high standard that must be met to vacate an arbitration award. *See Stead Motors of Walnut Creek v. Auto Machinists Lodge*, 886 F.2d 1200, 1208 n.8 (9th Cir. 1989) (en banc) (describing the extremely limited review on appeal of an arbitrator's decision). And we do not disagree with the general principles espoused by our esteemed colleague in dissent. Nevertheless, an arbitration award may be vacated if the proceedings violate the rule of fundamental fairness. *See Move, Inc. v. Citigroup Glob. Markets, Inc.*, 840 F.3d 1152, 1158 (9th Cir. 2016).

The arbitrator engaged in "extensive post-hearing ex parte communications with Diaz and the Union," including an unauthorized $6,000 settlement offer to Diaz of which Costco was unaware. The arbitrator rendered his decision via a vague and bizarre email only sent to the Union and reading: "The above named

2

grievant prevails in his grievance.  The Union's arguments as to double jeopardy were correct.  Union remedy is adopted.  So that I can look at myself in the mirror, my resignation is effective today."  The arbitrator resigned after rendering his email judgment, thereby preventing Costco from obtaining clarification of his decision.  Costco requested that the arbitrator email a copy of the completed Board of Adjustment Decision form, but never received the form.  A copy of the form was filed in the district court and stated with no elaboration:  "Double Jeopardy was proved by preponderance of evidence presented.  Employee to be made whole."  Because the arbitrator failed to provide a reasoned decision, Costco was left with uncertainty as to the parameters of the remedy ordered by the arbitrator.  "Based on the facts of the case before us, we simply cannot conclude that [Costco] received a fundamentally fair hearing," and Costco "is entitled to vacatur."  *Move, Inc.*, 840 F.3d at 1159.

Our colleague in dissent takes issue with our reliance on the language in *Move, Inc.*  However, the cases relied on by our dissenting colleague also consider the fairness of the proceedings.  *See Emp'rs Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1491 (9th Cir. 1991) (noting that the arbitrator's judgment must be "incorrupt") (citation omitted); *see also U.S. Life Ins. Co., v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1177 (9th Cir. 2010).  Notably,

3

those cases did not involve an arbitrator who failed to render a reasoned decision and otherwise abandoned his responsibilities.

Our colleague in dissent also insists that the arbitrator's decision drew its essence from the collective bargaining agreement. But there was no essence of the decision because there was no decision rendered, and no reasoning proffered. For all we know, the arbitrator flipped a coin, consulted a ouija board, or threw darts at a dartboard to determine the outcome. He certainly gave no explanation to the parties of his decision despite a request from Costco that he do so.

The dissent posits that we must defer to the arbitrator's decision "regardless of whether we believe that the decision finds the facts and states the law erroneously." *Dissenting Opinion*, p. 8 (quoting *Stead Motors*, 886 F.2d at 1204 (internal quotation marks omitted). However, the fallacy in that argument is that the arbitrator neither found the facts nor stated the law, so there is nothing to which we can defer as contemplated by the plain language of *Stead Motors*. Indeed, in *Stead Motors*, we specifically noted that the arbitrator "issued a written opinion and award." *Id.* at 1203.

Finally, our colleague in dissent represents that the record does not reflect that the arbitrator was biased. But ex parte communications and an unauthorized settlement offer reflect consummate bias and lack of commitment to a transparent

4

proceeding. *See Airgas West, Inc. v. Hawaii Teamsters and Allied Workers, Local 996*, No. 12-00454 LEK-KSC, 2013 WL 1856076 at *7 (D. Haw. April 30, 2013) ("The parties agree that an arbitrator's ex parte communication may be grounds to vacate an award . . ."). No party agreeing to arbitration bargained for a proceeding such as this, and nothing in our precedent compels us to ignore these facts. *See American Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2018) (noting courts' obligation to "rigorously enforce . . . the rules under which that arbitration will be conducted," as agreed by the parties).

**The decision of the district court confirming the arbitration award is REVERSED and REMANDED for vacatur of the arbitration award.**



*Costco Wholesale Corp. v. International Brotherhood of Teamsters, Local No. 542,*
No. 19-55451

N.R. SMITH, Circuit Judge, dissenting:

Arbitration "is a matter of consent, not coercion." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). "By agreeing to arbitrate . . . , [a party] trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985). As a sophisticated company, Costco Wholesale Corporation ("Costco") was aware of these advantages of arbitration when it chose to resolve its labor disputes in the arbitral forum. Costco also knew that it would have to "live with that choice," *see Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 573 (2013), even if "it [were] disappointed by or disagreed with the result in a particular case," *Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, Int'l Ass'n of Machinists & Aerospace Workers*, 886 F.2d 1200, 1217 (9th Cir. 1989) (en banc). For the role of the arbitrator in a labor dispute is to "state the parties' bargain," *id.* at 1205, such that "it is the arbitrator's view of the facts and of the meaning of the contract that [the parties] have agreed to accept," *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 37–38 (1987).

1

Thus, having "chose[n] arbitration, . . . [Costco] agreed with [James Diaz] that an arbitrator should determine what their contract meant" as it related to their dispute. *See Oxford Health Plans*, 569 U.S. at 573. "The arbitrator did what the parties requested: He provided an interpretation of the contract resolving that dispute[] . . . ." *Id.* "His interpretation went against [Costco], [and] maybe mistakenly so." *Id.* But, because "[i]t [was] the arbitrator's construction which [the parties] bargained for," *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960), "[t]he arbitrator's construction holds, however good, bad, or ugly," *Oxford Health Plans*, 569 U.S. at 573.

Now, Costco seeks relief from the bargain it struck with Diaz, simply because that bargain "ha[s] turned sour on [it]." *Stead Motors*, 886 F.2d at 1206. And despite the fact that Costco "agreed to purchase [the arbitrator's decision], eyes open, for better or for worse," the majority inexplicably grants Costco a refund by vacating the arbitration award—leaving Diaz without the benefit of his bargain. *See id.* (quoting Edgar A. Jones, Jr., *"His Own Brand of Industrial Justice": The Stalking Horse of Judicial Review of Labor Arbitration*, 30 UCLA L. Rev. 881, 893 (1983)).

The majority reaches this result solely based on one of Costco's arguments that the arbitrator's conduct denied Costco a fundamentally fair hearing. However,

2

for the following reasons, I must respectfully dissent. None of Costco's arguments have merit. I will first address the basis of the majority's decision.

1.      The arbitrator's conduct did not deny Costco a fundamentally fair hearing as defined by our precedent. A labor arbitration "hearing is fundamentally fair if it meets 'the minimal requirements of fairness'—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator." *Sunshine Mining Co. v. United Steelworkers of Am., AFL–CIO, CLC*, 823 F.2d 1289, 1295 (9th Cir. 1987) (quoting *Ficek v. S. Pac. Co.*, 338 F.2d 655, 657 (9th Cir. 1964)); *accord Emp'rs Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1491 (9th Cir. 1991) ("[P]erhaps [the movant] did not enjoy a perfect hearing; but it did receive a fair hearing. It had notice, it had the opportunity to be heard and to present relevant and material evidence, and the decisionmakers were not infected with bias. [The movant] was entitled to no more."); *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1177 (9th Cir. 2010) (finding that the movant had received a fair hearing—and thus failed to establish prejudice under 9 U.S.C. § 10(a)(3)—because "[i]t had notice, it had the opportunity to be heard . . . , and the decisionmakers were not infected with bias" (quoting *Emp'rs Ins. of Wausau*, 933 F.2d at 1491)).

      Remarkably, however, the majority refuses to consider whether the

3

arbitration satisfied these "minimal requirements of fairness" that are so clearly outlined in our precedent. *See Sunshine Mining Co.*, 823 F.2d at 1295 (quoting *Ficek*, 338 F.2d at 657); *accord Emp'rs Ins. of Wausau*, 933 F.2d at 1491; *U.S. Life Ins. Co.*, 591 F.3d at 1177.

Here, there is no evidence in the record (and the majority certainly points to none) indicating that Costco was given inadequate notice or denied the opportunity to be heard. Instead, the majority decides that Costco did not receive a fundamentally fair hearing, because the arbitrator engaged in "bizarre" conduct—e.g., partaking in ex parte communications with Diaz and the International Brotherhood of Teamsters, Local No. 542 ("Union"), rendering a "vague" decision issued in an unusual manner, extending an unauthorized settlement offer, and resigning prematurely. However, the FAA "does not expressly prohibit ex parte contact[,] [e]x parte conduct by an arbitration panel requires vacatur of an award *only* if the ex parte contact constitutes misbehavior that prejudices the rights of a party." *U.S. Life Ins. Co.*, 591 F.3d at 1176.[1] Neither the majority nor Costco address the necessary prejudice. However bizarre or

---

[1] Because the Union does not challenge the FAA's applicability in this case, there is no reason to decide "whether the FAA applies to arbitration of collective bargaining agreements." *See Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107, 1115 n.7 (9th Cir. 2012).

irregular the arbitrator's conduct may have been, it is undisputed that the arbitration proceedings met "'the minimal requirements of fairness'—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator." *Sunshine Mining Co.*, 823 F.2d at 1295 (quoting *Ficek*, 338 F.2d at 657). Therefore, notwithstanding the majority's "gut feeling" of unfairness, our precedent demands (in no unclear terms) the conclusion that the arbitration was fundamentally fair. *See id.*; *accord Emp'rs Ins. of Wausau*, 933 F.2d at 1491; *U.S. Life Ins. Co.*, 591 F.3d at 1177.

It is important to note that the majority also fails to cite any statutory grounds for vacating the arbitration award, resting its entire decision on the single "fair hearing" sentence from *Move, Inc. v. Citigroup Global Markets, Inc.*, 840 F.3d 1152 (9th Cir. 2016). Because *Move, Inc.* vacated an arbitration award under 9 U.S.C. § 10(a)(3)—which permits vacatur "where the arbitrator[] [was] guilty of . . . misbehavior by which the rights of any party have been prejudiced"—that provision of the Federal Arbitration Act ("FAA") must be the basis of the majority's decision. *See Move, Inc.*, 840 F.3d at 1158. Yet, there is no resemblance between the arbitrator's conduct in this case and "the unique set of facts" at issue in *Move, Inc.*, which involved the arbitrator defrauding the parties to the arbitration. *See* 840 F.3d at 1158–59. Therefore, there is simply no support in this

5

record for the grounds upon which the majority vacates the arbitration award.

2. Costco cites other grounds for vacatur of the arbitration award under the FAA. These arguments also fail. First, Costco has not shown that the arbitrator "refus[ed] to hear evidence *pertinent* and *material* to the controversy" before the Board of Adjustment, *see* 9 U.S.C. § 10(a)(3) (emphasis added), or that any refusal to hear evidence prejudiced Costco, *see U.S. Life Ins. Co.*, 591 F.3d at 1174. Second, although the arbitrator rendered his decision in an unusual manner, Costco has not satisfied the standard for vacatur under 9 U.S.C. § 10(a)(4), because it fails to show that the arbitration award is "completely irrational" or "exhibits a manifest disregard of law." *See Biller v. Toyota Motor Corp.*, 668 F.3d 655, 665 (9th Cir. 2012) (quoting *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (en banc)).

3. Costco argues that the arbitration award must be vacated, because it does not "draw its essence" from the collective bargaining agreement ("CBA"). *See S. Cal. Gas Co. v. Util. Workers Union of Am., Local 132, AFL–CIO*, 265 F.3d 787, 792–93 (9th Cir. 2001) ("Vacatur of an arbitration award under section 301 of the [Labor Management Relations Act ("LMRA")] is warranted . . . when the award does not draw its essence from the [CBA] and the arbitrator is dispensing his own brand of industrial justice."). However, our review of this claim must be

6

"extremely narrow," *Aramark Facility Servs. v. Serv. Emps. Int'l Union, Local 1877, AFL CIO*, 530 F.3d 817, 822–23 (9th Cir. 2008) (quoting *Federated Dep't Stores v. United Foods & Commercial Workers Union, Local 1442*, 901 F.2d 1494, 1496 (9th Cir. 1990)), and we must accord the arbitrator a "nearly unparalleled degree of deference," *Stead Motors*, 886 F.2d at 1205. "[E]ven if we were convinced that the arbitrator misread the [CBA] or erred in interpreting it, such a conviction would not be a permissible ground for vacating the award." *ASARCO LLC v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC*, 910 F.3d 485, 490 (9th Cir. 2018) (quoting *Va. Mason Hosp. v. Wash. State Nurses Ass'n*, 511 F.3d 908, 913–14 (9th Cir. 2007)). Thus, we "must limit our review to whether the arbitrator's solution can be rationally derived from some plausible theory of the general framework or intent of the agreement." *Id.* at 491 (alteration adopted and footnote omitted) (quoting *United Food & Commercial Workers Int'l Union, Local 588 v. Foster Poultry Farms*, 74 F.3d 169, 173 (9th Cir. 1995)).

Here, the arbitrator "arguably construed [and] applied" the CBA's proper-cause provision in finding that Diaz's termination violated industrial double jeopardy. *See Haw. Teamsters & Allied Workers Union, Local 996 v. United Parcel Serv.*, 241 F.3d 1177, 1178 (9th Cir. 2001) (alterations adopted and internal

7

quotation marks omitted) (quoting *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000)). The arbitrator did not "ignore the plain language of the contract," *id.* at 1181 (alteration adopted) (quoting *Stead Motors*, 886 F.2d at 1205 n.6), or "follow his own whims and biases," *id.* (alteration adopted) (quoting *Garvey v. Roberts*, 203 F.3d 580, 588–89 (9th Cir. 2000)). Therefore, we must conclude that the arbitration award draws its essence from the CBA. *Id.* at 1178. "[W]e are bound . . . to defer to the decision of [the arbitrator]," regardless of whether "we believe that the decision finds the facts and states the law erroneously."[2] *Stead Motors*, 886 F.2d at 1204.

4.    Costco argues that the arbitration award must be vacated even if it "draws its essence" from the CBA, because the award violates public policy. *See S. Cal. Gas Co.*, 265 F.3d at 792–93 ("Vacatur of an arbitration award under section 301 of the LMRA is warranted . . . when the award is contrary to public policy . . . ."). To vacate the award on public-policy grounds, Costco must clearly show that an explicit, well-defined, and dominant public policy specifically militates against Diaz's *reinstatement*. *See Aramark*, 530 F.3d at 823; *see also Stead Motors*, 886 F.2d at 1212 ("If a court relies on public policy to vacate an arbitral award

---

[2] The majority argues that the arbitrator's decision did not have "essence," but cites no authority for the proposition that is should.

8

reinstating an employee, it must be a policy that bars *reinstatement*.”). Because Costco has failed to identify such a policy that is “ascertain[able] by reference to . . . laws and legal precedents, not from general considerations of supposed public interests,” *see E. Associated Coal Corp.*, 531 U.S. at 62 (internal quotation marks omitted) (quoting *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 766 (1983)), we may not vacate the arbitration award on public-policy grounds.