**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SCHOENDUVE CORPORATION, a
California corporation,
          *Petitioner-Appellee,*

          v.

LUCENT TECHNOLOGIES, INC., a
Delaware corporation,
          *Respondent-Appellant.*

No. 04-15529

D.C. No.
CV-03-03523-RMW

OPINION

Appeal from the United States District Court
for the Northern District of California
Ronald M. Whyte, District Judge, Presiding

Argued and Submitted
November 17, 2005—San Francisco, California

Filed March 22, 2006

Before: Diarmuid F. O'Scannlain, Sidney R. Thomas, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Tallman

## COUNSEL

Jeffrey K. Riffer, Jeffer, Mangels, Butler & Marmaro, Los Angeles, California, for the respondent-appellant.

Jack Russo, Russo & Hale, Palo Alto, California, for the petitioner-appellee.

## OPINION

TALLMAN, Circuit Judge.

Lucent Technologies ("Lucent") appeals the district court's order confirming an arbitration award entered in favor of Schoenduve Corporation ("Schoenduve"). Lucent asks this Court to vacate or modify the arbitration award claiming that the arbitrator (1) exceeded his authority by ruling on an issue not submitted by the parties, (2) modified or expanded the unambiguous language of the agreement requiring arbitration, and (3) failed to provide Lucent an opportunity to rebut Schoenduve's claim for commissions under a quasi-contract or estoppel theory. Lucent also asks us to vacate the portion of the arbitrator's decision awarding attorneys' fees to Schoenduve as a manifest disregard of the law. Because the arbitrator stayed within the bounds of his authority in applying New York substantive law as the parties had contractually agreed, and made a good faith effort to apply the applicable provisions of the California Civil Code to the award of attorneys' fees, we affirm.

I

A

Lucent is a manufacturer of wireless communication products and Schoenduve is a manufacturer's sales representative. On August 14, 1996, Lucent entered into a Manufacturer's Representative Agreement ("MRA") with Schoenduve, authorizing Schoenduve to solicit orders for Lucent's wireless communication products from Original Equipment Manufacturers ("OEMs") in Northern California and Nevada.

Beginning in December 1997, Schoenduve worked to procure a sale of Lucent's wireless communication products to Apple Computer.[1] On December 15, 1998, two days before it

---

[1]The facts surrounding Schoenduve's role in the Apple transaction are not in contention nor are they relevant to the disposition of this appeal.

signed an initial agreement with Apple Computer, Lucent ter-minated the MRA and its relationship with Schoenduve.[2] Lucent and Apple Computer finalized the agreement for the sale and purchase of Lucent's wireless communication prod-ucts in July 1999. The supply contract was worth millions of dollars to Lucent.

Schoenduve filed suit in Santa Clara County Superior Court on May 18, 2001, seeking unpaid commissions for its role in procuring the Apple transaction. The MRA contained an arbi-tration clause that applied to any "dispute aris[ing] out of or relat[ing] to th[e] [MRA], or its breach."[3] Lucent removed the case to federal court, where the district court granted Lucent's motion to compel arbitration.

## B

As required by the Commercial Arbitration Rules of the AAA, Schoenduve filed a Demand for Arbitration in order to initiate the arbitration proceedings. The Demand for Arbitra-tion was very broad, describing the nature of the dispute as "an action to recover those commissions, interest and other damages arising from the wrongful conduct of [Lucent]." Schoenduve claimed to "ha[ve] substantial damages arising from breach of contract and other claims against [Lucent], including [Lucent's] failure to disclose and account for sub-stantial monies owed to [Schoenduve]."

Throughout the arbitration, Lucent argued that the MRA governed the entire transaction and that, pursuant to the termi-

[2]Section 13(a) of the MRA allowed either party to "terminate th[e] [MRA] without cause upon thirty (30) days' prior written notice to the other party given at any time."

[3]Pursuant to the MRA, the parties were first required to submit their dis-pute to a mediator. If mediation was unsuccessful, the case then went to an arbitrator selected by the parties or to binding arbitration before the American Arbitration Association ("AAA").

nation provisions of the MRA, Schoenduve was not entitled to any post-termination commissions for the Apple transaction. Schoenduve disagreed. It argued that the "boilerplate" provisions of the MRA did not apply to the "design win" Apple transaction; rather, it argued that only the appendices of the MRA, which contained no termination provision, governed this transaction.

The parties participated in 11 days of arbitration hearings spread out over approximately eight months in New York, New York, the venue established by the MRA. The arbitrator issued his 19-page written opinion on July 3, 2003. He rejected Schoenduve's claim for post-termination commissions under the unambiguous terms of the MRA. Furthermore, the arbitrator ruled that Lucent had an unfettered contractual right to terminate Schoenduve's representation on 30 days' notice and that this precluded any argument that Lucent acted in "bad faith" or had breached a duty of good faith and fair dealing.

Although Lucent prevailed on all claims specifically arising out of the MRA, the arbitrator subsequently concluded that the MRA did not apply to this type of "whale sized" transaction. Consequently, he found that "since Lucent's form of MRA was not intended to cover this type [of] transaction, and did not in fact cover it[,] [Schoenduve] [wa]s entitled to recover compensation pursuant to the legal doctrine recognized in New York of quasi-contract." Alternatively, the arbitrator ruled that because Lucent had excluded Schoenduve from the negotiations only after Lucent's Sales Manager had become involved, "Lucent should be estopped to deny Schoenduve's entitlement to commissions it worked for and earned."

The arbitrator held that although Lucent did not willfully fail to enter into a written contract, it did fail to enter into a written contract that covered the Apple transaction. Lucent therefore violated California Civil Code § 1738.13, which

requires all manufacturers to enter into a written contract with their representatives. Because Schoenduve was the prevailing party, the arbitrator also awarded Schoenduve attorneys' fees and costs under California Civil Code § 1738.16.

## II

The district court had jurisdiction pursuant to 28 U.S.C. § 1332(a) and we have jurisdiction under 28 U.S.C. § 1291. We review the district court's decision to confirm an arbitration award de novo. *Poweragent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1193 (9th Cir. 2004). However, review of the actual award is "both limited and highly deferential." *Id.* (internal quotation marks omitted). We are also mindful of long-settled jurisprudence that encouraging alternative dispute resolution outside the courtroom was the principal motivation behind passage of the Federal Arbitration Act ("FAA"). *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) ("[The FAA's] 'purpose was to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts.' " (quoting *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24 (1991))); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (same); *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1201 (9th Cir. 2003) ("One purpose of the FAA's liberal approach to arbitration is the efficient and expeditious resolution of claims." (citing H.R. REP. NO. 68-96 (1924))).

The strict procedural requirements that govern litigation in federal courts do not apply to arbitration. Arbitration offers flexibility, an expeditious result, and is relatively inexpensive when compared to litigation. *Gilmer*, 500 U.S. at 31 ("[B]y agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.' " (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985))); *Kyocera Corp. v. Prudential-Bache Trade*

*Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003) (en banc) (stating that arbitration was designed "to respond to the wishes of the parties more flexibly and expeditiously than the federal courts' uniform rules of procedure allow"); *Pack Concrete, Inc. v. Cunningham*, 866 F.2d 283, 285 (9th Cir. 1989) (describing "congressional policy in favor of expeditious and relatively inexpensive means of settling [disputes]" (internal quotation marks omitted)).

To protect the overall purpose of arbitration and avoid any tendency of a court to impute its own strict and rigid practices onto arbitration proceedings, Congress has limited the ability of federal courts to review arbitration awards. *See* 9 U.S.C. § 9; *see also Pack Concrete, Inc.*, 866 F.2d at 285 (stating that permitting a plenary review of arbitration would undermine Congress's policy of favoring arbitration as an expeditious and relatively inexpensive means of resolving disputes); *Kyocera Corp.*, 341 F.3d at 998 ("Congress's decision to permit sophisticated parties to trade the greater certainty of correct legal decisions by federal courts for the speed and flexibility of arbitration determinations is a reasonable legislative judgment that we have no authority to reject.").[4]

We must affirm an order to confirm an arbitration award unless it can be vacated, modified, or corrected as prescribed by the FAA. 9 U.S.C. §§ 9-11; *see Kyocera Corp.*, 341 F.3d at 1000 ("hold[ing] that a federal court may only review an arbitral decision on the grounds set forth in the [FAA]" and that the "parties have no power to alter or expand those grounds"). A federal court may vacate an award if the arbitra-

---

[4]This case underscores why federal courts must play a limited role in reviewing disputes resolved through arbitration. Lucent terminated the MRA in December 1998. This dispute continues to fester even though the arbitrator rendered his decision two and one-half years ago. If arbitration is meant to be swift and final, federal courts must respect the informal nature of arbitration proceedings. Seven years of litigation is not what Congress and the courts expect when arbitration is the mutually chosen remedy to resolve disputes between the parties.

tor engages in misbehavior that prejudices a party, or if the arbitrator exceeds his powers in rendering such an award. 9 U.S.C. § 10(a)(3)-(4). "[A]rbitrators exceed their powers in this regard not when they merely interpret or apply the governing law incorrectly, but when the award is completely irrational, or exhibits a manifest disregard of law." *Kyocera Corp.*, 341 F.3d at 997 (internal quotation marks and citations omitted).

Alternatively, a federal court may modify or correct an award "[w]here the arbitrators have awarded upon a matter not submitted to them." 9 U.S.C. § 11(b). A court may "strike all or a portion of an award pertaining to an issue not at all subject to arbitration." *Kyocera Corp.*, 341 F.3d at 997-98. This limited review "is designed to preserve due process" without "unnecessary public intrusion into private arbitration procedures." *Id.* at 998.

## III

**[1]** The scope of the arbitrator's authority is determined by the contract requiring arbitration as well as by the parties' definition of the issues to be submitted in the submission agreement. *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1*, 611 F.2d 580, 583-84 (5th Cir. 1980) (holding that the court must look at both the contract requiring arbitration as well as the submission agreement to determine the arbitrator's authority); *see also Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1323 (5th Cir. 1994) ("[T]he parties may agree to arbitration of disputes that they were not contractually compelled to submit to arbitration."). In other words, the "initial contract to arbitrate may be modified [or expanded] by the submission agreement." *Piggly Wiggly Operators' Warehouse, Inc.*, 611 F.2d at 584. The Demand for Arbitration served as Lucent's and Schoenduve's submission agreement. Because Lucent did not object to the breadth of the Demand for Arbitration, the scope of the arbitrator's authority is deter-

mined not only by the MRA, but also by the Demand for Arbitration. *See id.* at 583-84.

**[2]** Intending to reach all aspects of their relationship, Lucent required the parties to arbitrate any dispute arising out of or relating to the MRA. *See Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 213 n.2 (5th Cir. 1993) (stating that when the arbitration clause calls for "any dispute 'relating to or arising out of' the agreement" to be submitted to arbitration, the parties "intend the clause to reach all aspects of the relationship"). Here, the MRA, which required arbitration "if a dispute arises out of or relates to this Agreement," was broad enough to include a claim for commissions based on quasi-contract or estoppel. Therefore, we turn to the Demand for Arbitration to determine whether the parties chose to limit the scope of the arbitrator's authority. *See id.* at 213 (rejecting the argument that the arbitrator exceeded his authority when the parties submitted everything related to the dispute to the arbitration panel and there was no contractual provision removing the issue from the arbitrator's jurisdiction).

**[3]** In the Demand for Arbitration, Schoenduve identified its claim as "an action to recover those commissions, interest and other damages arising from the wrongful conduct of [Lucent]." It sought "substantial damages arising from breach of contract and other claims against [Lucent], including [Lucent's] failure to disclose and account for substantial monies owed to [Schoenduve]." By not objecting to the Demand for Arbitration, Lucent essentially agreed to arbitrate all issues surrounding Schoenduve's claim for commissions. The arbitrator necessarily had the authority to decide whether Schoenduve was entitled to damages based on quasi-contract or estoppel because those issues were implicit within the submission agreement. *See Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 830 (9th Cir. 1995) (holding that the arbitration panel did not exceed its authority when the "question of the conditions of reimbursement was implicit in the submission [agreement]" and the contract requiring arbitration

"did not preclude the arbitration panel from resolving issues implied in the submission [agreement] and did not limit the form or content of the award").

The scope of the arbitrator's jurisdiction extends to issues not only explicitly raised by the parties, but all issues implicit within the submission agreement. *Mich. Mut. Ins. Co.*, 44 F.3d at 830. Schoenduve sought the commissions for which it claimed it was entitled. It argued, among other theories, that only a portion of the MRA applied to the transaction. The arbitrator found that the MRA did not apply to the Apple transaction. Consequently, with no applicable written agreement, the question of quasi-contract necessarily arose. It was implicit within the issues presented in the Demand for Arbitration.

Furthermore, the arbitrator's interpretation of the scope of his powers is entitled to the same level of deference as his determination on the merits. *Pack Concrete, Inc.*, 866 F.2d at 285; *see also Valentine Sugars, Inc.*, 981 F.2d at 213 ("In determining whether the arbitrator exceeded his jurisdiction, we resolve all doubts in favor of arbitration."). The policy concerns requiring deference to the arbitrator's decision on the merits are equally applicable when reviewing the arbitrator's interpretation of the submission agreement. *Pack Concrete, Inc.*, 866 F.2d at 285-86 (stating that permitting a plenary review would impede the expeditious and inexpensive nature of arbitration proceedings and, "[f]urthermore, interpreting the issue submitted often requires construction of the agreement itself, a job clearly for the arbitrator").

**[4]** While we recognize that the Demand for Arbitration was broad, "[t]he parties agreed to arbitration . . . and must accept the loose procedural requirements along with the benefits which arbitration provides." *Valentine Sugars, Inc.*, 981 F.2d at 213; *see also Gilmer,* 500 U.S. at 31. "Federal law . . . does not impose any requirements as to how specific a notice of arbitration must be." *Valentine Sugars, Inc.*, 981 F.2d at

213. Accordingly, we will follow the lead of the Fifth Circuit: "[i]n the absence of a congressional mandate, we will not develop a code of pleading here." *Id.*[5] The arbitrator's quasi-contract award arose implicitly from Schoenduve's claim for commissions. Therefore, we hold that the arbitrator did not exceed his authority by awarding Schoenduve damages based on quasi-contract or estoppel, both theories recognized under New York commercial law.

## IV

**[5]** Lucent also challenges the arbitration award on the

---

[5]Lucent continues to argue that Schoenduve submitted only three claims to the arbitrator: breach of contract, tortious termination of the MRA, and willful failure to pay commissions under the MRA in violation of California Civil Code § 1738.15. However, in its closing brief submitted to the arbitrator, Schoenduve argued that it was entitled to receive commissions not only under the written agreement, but also because of the "many oral representations" Lucent had made regarding commissions. Schoenduve argued that it continued to perform services for Lucent and "did not terminate the agreement and offer Apple computer to other wireless providers" because it relied in part upon Lucent's oral representations. Schoenduve believed it "[wa]s entitled to the benefit of the promises made by Lucent even if such promises were not considered oral agreements modifying the written contract." In making this argument to the arbitrator, Schoenduve cited *Farash v. Sykes Datatronics, Inc.*, 59 N.Y.2d 500 (1983).

Lucent argues that Schoenduve's citation to this case did not put the issue of quasi-contract before the arbitrator "because detrimental reliance is not a claim for quasi-contract." While we recognize that there are differences between the theories of quasi-contract, estoppel and detrimental reliance, the *Farash* court dismissed arguments over nomenclature, and discussed the plaintiff's action as if it were based in quasi-contract. *See* 59 N.Y.2d at 504-06. We also decline any invitation to discuss the intricate differences between these three theories. Nonetheless, this argument illustrates why we must give the arbitrator's interpretation of the scope of his authority a great deal of deference. *See Pack Concrete, Inc.*, 866 F.2d at 285 (stating that deference is even more appropriate when the argument "is not that the discharge issue was not arbitrable or even factually unrelated to the dispute, but rather that the [claimant] mislabeled the issue when it requested [arbitration]").

basis that the arbitrator deprived it of the opportunity to be heard "at a meaningful time and in a meaningful manner" by ruling on a "claim" not properly presented by the parties. Under 9 U.S.C. § 10(a)(3), we may vacate an arbitration award if the arbitrator was guilty of misconduct in "refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced."

**[6]** As discussed above, the quasi-contract and estoppel issues were properly before the arbitrator. Lucent was never denied an opportunity to argue these claims; in fact, it did so not only in its opening statement, but also in a pre-hearing letter to the arbitrator requesting summary judgment.[6] Because the arbitrator did not abuse his powers by ruling on a issue implicitly submitted to him, and because Lucent was never denied an opportunity to present evidence as to that issue, the arbitrator did not engage in any misbehavior under 9 U.S.C. § 10(a)(3). We see no due process violation here where the dispute has always been whether Schoenduve was entitled to commissions from the Lucent-Apple transaction.

V

In addition to arguing that the arbitrator exceeded his authority by ruling on an issue not submitted to him, Lucent claims that the arbitrator exceeded his authority by ignoring the plain language of the MRA. Because the MRA stated that the arbitrator "may not limit, expand or otherwise modify the terms of the Agreement," Lucent argues that the arbitrator

---

[6]Lucent states that it did not "argue" or "brief" the quasi-contract theory, pointing out that it made only a "one phrase reference" to this theory and that it was "buried in a quotation from an out-of-state case." However, this reference was not only made in the summary judgement letter, but again during Lucent's opening statement. Despite being a minor reference, it supports the argument that the quasi-contract theory was implicitly intertwined in the issue of entitlement to commissions submitted to the arbitrator, and that Lucent had an opportunity to present its case.

exceeded his authority by awarding Schoenduve commissions on a quasi-contract theory after ruling that the limited circumstances in which Schoenduve could recover post-termination commissions under the MRA did not apply.

**[7]** The arbitrator did not modify, change or expand the agreement. Instead, he ruled that the MRA simply did not apply to the Apple transaction. "The fact that the arbitrator lacks the power to modify the agreement does not compel the conclusion that he also lacks the power to determine which provisions are in fact a part of the contract." *Leyva v. Certified Grocers of Cal., Ltd.,* 593 F.2d 857, 860 (9th Cir. 1979) (holding that the arbitrator does have the power to determine whether various provisions in the contract are void). As recognized by our Court in *Leyva*:

> [a] necessary first step in interpreting any contract is to determine exactly what language is controlling in the case. Absent a clear limitation on the arbitrator's authority, [the court should] decline to read the exception clause in this contract to limit the arbitrator's power in the manner suggested by appellants.

*Id.*

The arbitrator did not change the terms of the MRA. He did not award Schoenduve commissions under the MRA because Schoenduve was not entitled to commissions under the terms of that agreement.[7] *Cf. Roadway Package Sys., Inc. v. Kayser*, 257 F.3d 287, 300 (3d Cir. 2001) (finding that the arbitrator exceeded his powers when, although he acknowledged that the written agreement applied, he nonetheless ignored the written provisions and grounded his decision on notions of fairness and equity). Here, both parties agreed that New York

---

[7]Specifically, the arbitrator ruled that "recovery on the MRA is foreclosed in light of [Lucent's] meritorious and complete legal defenses to the claims under the MRA."

law applied. After hearing the evidence, the arbitrator ruled that the MRA did not govern the resolution of this dispute, but granted Schoenduve relief under a different New York legal theory: quasi-contract or estoppel.

**[8]** Contrary to Lucent's argument, both parties did not agree that the transaction was covered by the MRA in its entirety. Schoenduve argued that only the appendices to the MRA applied to this transaction, and if the arbitrator determined otherwise as a matter of law, it argued that it should recover in equity because of its reliance on Lucent's oral representations. Moreover, the Demand for Arbitration contained sufficiently broad language to support equitable recovery of commissions. *See supra*, § III. Although Lucent may now be arguing that the MRA's arbitration clause limited what could and could not be presented to the arbitrator, by not objecting to the Demand for Arbitration, Lucent agreed to arbitrate all issues surrounding Schoenduve's claim for commissions. *See Piggly Wiggly Operators' Warehouse, Inc.*, 611 F.2d at 584 ("[O]nce the parties have gone beyond their promise to arbitrate and have actually submitted an issue to an arbit[rator], we must look both to their contract and to the submission of the issue to the arbitrator to determine his authority.").

## VI

Finally, Lucent asks this Court to vacate the arbitrator's award of attorneys' fees. Review of the merits of an arbitration award is extremely limited. *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1105 (9th Cir. 2003).

> Confirmation of an arbitration award is required even in the face of erroneous misinterpretations of law. "It is not even enough that the [arbitrator] may have failed to understand or apply the law. An arbitrator's decision must be upheld unless it is completely irrational or it constitutes a manifest disregard of the law."

*Id.* (alteration in original) (quoting *French v. Merrill Lynch,* 784 F.2d 902, 906 (9th Cir. 1986)). Lucent contends that "[w]here an arbitrator recognizes that a statute providing attorneys [sic] fees is not applicable, but awards such fees anyway, the arbitrator manifestly disregards the law." While that is a correct statement of the law, that is not what the arbitrator did in this case.

During the arbitration proceedings, Schoenduve argued that it was entitled to treble fees, attorneys' fees and costs. California Civil Code § 1738.15 provides that a manufacturer who "willfully fails to enter into a written contract" or "willfully fails to pay commissions as provided in the written contract shall be liable to the sales representative in a civil action for treble the damages proved at trial." Further, "[i]n a civil action brought by the sales representative pursuant to this chapter, the prevailing party shall be entitled to reasonable attorney's fees and costs in addition to any other recovery." Cal. Civ. Code § 1738.16.

**[9]** Contrary to Lucent's argument, the arbitrator did not reject Schoenduve's claim for treble damages pursuant to § 1738.15 but then award it attorneys' fees as a prevailing party under that provision. Rather, the arbitrator determined that § 1738.15 did not apply because Lucent did not willfully fail to enter into a contract. However, the arbitrator found that Lucent violated § 1738.13(a)[8] by failing to enter into a written contract as to the Apple transaction.[9] Because the arbitrator

---

[8]California Civil Code § 1738.13(a) requires any manufacturer doing business in California to enter into a written contract with its sales representatives when the contemplated method of payment involves commissions.

[9]Again, the arbitrator found that the MRA did not apply to the Apple transaction. Because Lucent entered into the MRA for smaller transactions, the arbitrator determined that Lucent did not *willfully* fail to enter into a written contract; however, because Lucent did not enter into a written contract that applied specifically to the Apple transaction, the arbitrator found that Lucent did violate the general rule in § 1738.13(a).

ruled that Lucent violated § 1738.13(a), not § 1738.15 as Lucent argues, the arbitrator did not manifestly disregard the law by ruling that Schoenduve was the prevailing party and awarding it attorneys' fees and costs pursuant to § 1738.16. Furthermore, even though the MRA stated that each party shall bear its own arbitration expenses, this provision of the California Civil Code may not be waived by any sales representative or manufacturer doing business in California. Cal. Civ. Code § 1738.13(e).

**[10]** The arbitrator did not modify or change the MRA, nor did he ignore an applicable statutory provision. The arbitrator made a "good faith" attempt to apply the California Civil Code. Consequently, there are no grounds to vacate or modify his decision under the FAA. *See Kyocera Corp.*, 341 F.3d at 1003 ("The risk that arbitrators may construe the governing law imperfectly in the course of delivering a decision that attempts in good faith to interpret the relevant law . . . is a risk that every party to arbitration assumes . . . .").

## VII

The arbitration clause contained within the MRA was sufficiently broad to include claims under quasi-contract or estoppel. The Demand for Arbitration did not limit the arbitrator's authority to rule on any such claims and the arbitrator did not engage in any misbehavior by preventing Lucent from making its arguments. By interpreting the terms of the MRA and subsequently ruling that it did not apply to the Apple transaction, the arbitrator did not modify or change the terms of that agreement. Furthermore, the arbitrator made a good faith effort to apply both New York and California law. Therefore, because the arbitrator did not exceed the scope of his authority nor manifestly disregard the law, we affirm the district court's decision to confirm the arbitration award.

**AFFIRMED.**