WAVELAND CAPITAL PARTNERS, LLC, Plaintiff,

v.

Randall A. TOMMERUP individually and as Sole Member of R. Tommerup–Executive Park, LLC and R. Tommerup–Arrowhead, LLC and Helen E. Tommerup, individually and as Sole Member of H. Tommerup–Executive Park, LLC and H. Tommerup–Arrowhead, LLC, Defendants.

No. CV 11–76–H–DWM.

United States District Court,
D. Montana,
Helena Division.

Jan. 6, 2012.

Murry Warhank, Gough Shanahan Johnson & Waterman, Helena, MT, for Plaintiff.

Linda M. Deola, Reynolds Motl and Sherwood, Helena, MT, for Defendants.

### ORDER

DONALD W. MOLLEY, District Judge.

As a preliminary matter, while acronyms can be convenient shorthand between parties who are familiar with them, they are not an effective means of communicating with the Court. In documents filed in this case, the parties shall use only commonly understood acronyms (e.g. LLC, TRO). Other acronyms, such as TIC and FINRA, must be spelled out. Additionally, Local Rule 1.5 requires that all documents be double-spaced and typed in 14–point font size. D. Mont. L.R. 1.5, Jan. 1,2012.

### A. Background

Plaintiff Waveland Capital Partners, LLC ("Waveland") filed an ex parte motion for a temporary restraining order and a show cause hearing for a preliminary injunction. Dkt # 4. Waveland's counsel represented he provided Defendants ("the Tommerups") notice of the motion via a telephone message and emailed Defendants copies of the supporting documents filed. Decl. Brett G. Evans, ¶ 10, dkt # 5–2. The Tommerups filed a response brief January 4, 2012. Dkt # 7. Waveland filed its reply brief January 5, 2012.

Waveland seeks to halt an arbitration hearing before the Financial Institution Regulatory Authority ("the Authority") that is scheduled for January 9, 2012. Dkt # 4, 3. In the underlying dispute, the Tommerups filed a Statement of Claim dated October 13, 2010 naming Waveland and Waveland's registered agent, Melvin T. Day, as respondents. Dkt # 5, 2; dkt # 5–2, 5–63. The Authority served this claim on Waveland on October 20, 2010. Decl. Brett G. Evans, ¶ 4, dkt # 5–2. On December 6, 2010, Waveland signed an Arbitration Submission Agreement. Arbitration Submission Agreement, dkt # 7–1, 2–3. The Arbitration Submission Agreement stated, in relevant part:

1. The undersigned parties ("parties") hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related cross claims, counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the FINRA By–Laws, Rules, and Code of Arbitration Procedure.

2. The parties hereby state that they or their representative(s) have read the procedures and rules of FINRA relating

to arbitration, and the parties agree to be bound by these procedures and rules.

3. The parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s). The parties further agree and understand that the arbitration will be conducted in accordance with the FINRA Code of Arbitration Procedure.

4. The parties agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement. The parties further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

*Id.* After filing this agreement, Waveland participated in a prehearing conference and discovery. Dkt # 7, 8; Scheduling Order, Dkt # 7–1, 6–7. On November 8, 2011, Waveland filed with the Authority a motion to dismiss, arguing in part that this dispute is not arbitrable. Dkt # 5–2, 3. November 8th is the first suggestion that Waveland raised this defense, and the arbitrator has apparently not ruled on the motion. *Id.* Waveland then filed the motion at issue here.

**B. Analysis**

In the Ninth Circuit, a party seeking a preliminary injunction or a temporary restraining order must show a likelihood of success on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that an injunction is in the public interest, and that the balance of equities sharply favors the plaintiff. *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir.2011).

A party cannot be required to arbitrate a dispute which it has not agreed to submit to arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). "Forcing a party to arbitrate a dispute that it did not agree to arbitrate constitutes per se irreparable harm." *Morgan Keegan & Co., Inc. v. Drzayick,* 2011 WL 5403031 (D.Idaho Nov. 8, 2011) (citations omitted). Thus, a court considering a challenge to the arbitration of an issue must determine whether the parties agreed to arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). The parties' intentions are "generously construed as to issues of arbitrability." *Id.* This is because the Federal Arbitration Act reflects an "emphatic federal policy in favor of arbitral dispute resolution." *Id.* at 631, 105 S.Ct. 3346. However, "[c]ourts should not assume the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e] evidence' that they did so." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

If the parties agreed to arbitration and the dispute falls within the scope of their agreement, the court must then determine whether any outside legal constraints prohibit arbitration of the issue. *Mitsubishi Motors Corp.,* 473 U.S. at 628, 105 S.Ct. 3346. Because a court must still determine whether there are legal constraints to jurisdiction, a party cannot waive its right to challenge the legal arbitrability of a dispute in court. Accordingly, it is necessary to consider the likelihood of success on the merits of Waveland's argument that the Tommerups are not customers under Rule 12200 of the Authority's General Arbitration Rules.

1. Because it agreed to arbitrate this dispute and the agreement is valid, Waveland is not likely to succeed on the merits of its claim that it did not agree to arbitrate this dispute, its continued participation in the arbitration will not constitute irreparable harm, and public policy favors the continued arbitration.

■ Waveland does not question whether the Arbitration Submission Agreement is an agreement to arbitrate the underlying dispute between the parties.[1] The law supports this concession. An arbitration settlement agreement constitutes a valid, binding agreement. *Schoenduve Corp. v. Lucent Technologies, Inc.*, 442 F.3d 727, 732–733 (9th Cir.2006) ("The scope of the arbitrator's authority is determined by the contract requiring arbitration *as well as by the parties' definition of the issues to be submitted in the submission agreement.*") (emphasis added); *Mayo v. Dean Witter Reynolds, Inc.*, 258 F.Supp.2d 1097, 1105 (N.D.Cal.2003) ("An executed [submission agreement] is a valid, binding agreement.") (citing *First Montauk Securities Corp. v. Menter*, 26 F.Supp.2d 688, 689 (S.D.N.Y.1998)); *Traderight Securities, Inc. v. Kirschman*, 2011 WL 614090, *3 (N.D.Ill.2011) ("The parties did agree to arbitration. The Kirschmans and Gibson brought claims in the arbitration against Traderight, seeking to impose liability on Traderight for the losses caused by Enterprises's conduct.... Traderight explicitly agreed to arbitrate those claims by executing [arbitration submission agreements]").

However, Waveland argues it is not bound by the Arbitration Submission Agreement because it is "invalid, void, or revocable" based on fraudulent misrepresentation by the Tommerups or the unilateral mistake of Waveland. Dkt # 8, 2. Additionally, Waveland argues that the Arbitration Submission Agreement does not represent a clear and unmistakable agreement to arbitrate arbitrability. *Id.* at 5.

a. The Arbitration Submission Agreement is valid and binding on the parties.

■ An arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A contract is voidable by fraudulent misrepresentation. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1137 (9th Cir.2000). Waveland claims it was induced to sign the Arbitration Submission Agreement because the Tommerups' Statement of Claim contained allegedly fraudulent misrepresentations that caused Waveland to "form[ ] the assumption" that the dispute was arbitrable. Pl.'s Reply Br., dkt # 8, 4.

■ In support of this argument, Waveland points to two representations in the Tommerups' Statement of Claim. First, the Statement of Claim describes the investments the Tommerups purchased as "DBSI—Executive Park LLC" and "DBSI Arrowhead, LLC." *Id.* at 3. Because Waveland "had a selling agreement to sell various DBSI related products" and "one was similarly named to [the Tommerups'] first misrepresented investment," *id.*, Waveland apparently "assumed" it had a selling agreement to sell these products as well. During discovery, however, Waveland

---

1. Notably, Waveland did not mention the Arbitration Submission Agreement in its original motion or supporting memorandum. Its statement that "[t]here is no arbitration agreement between Waveland and any of the Defendants" was, at least, misleading. Dkt # 5, 6. Under FINRA Rule 13000, "The FINRA Submission Agreement is a document that parties must sign at the outset of an arbitration *in which they agree to submit to arbitration* under the Code." (emphasis added.)

learned the investments were made not through DBSI, but through another third party, Spectrus Real Estate Group/FOR 1031, with whom it claims it did not have a selling agreement. ("FOR 1031"). *Id.*

The second representation Waveland points to is the representation that Waveland's registered agent, Day, "sold" the investments to the Tommerups. E.g. Statement of Claim, dkt # 5–2, 9 (Day's "sale"), 41 ("A special relationship of trust and confidence exists between a securities salesman and his customer."), 45–46 ("sale of" securities). However, the Tommerup's real estate broker, not Day, was listed as the broker for the investments. *Id.* at 4; dkt # 8–1, 4–5. Day was listed as a sales executive for FOR 1031 and in some way promoted the investments, either directly to the Tommerups or to their real estate broker. *Id.* Waveland also apparently "assumed" a third statement to be accurate—that the claims involved securities rather than real estate transactions, a legal issue which it now disputes and argues robs the Authority of jurisdiction. *Id.* at 7.

According to Waveland, it reasonably relied on these statements—made in a Statement of Claim filed in an adversarial context—in deciding to agree to submit the dispute to arbitration. Waveland cites no authority to support its contention that a plaintiff's framing of the issues in a claim can constitute fraudulent misrepresentation. Moreover, the proposition is unreasonable. The Tommerups framed their complaint before a regulatory authority, and Waveland apparently accepted their statement and interpretation of the facts and legal issues without sufficient investigation if its position is to be accepted. If a party believes its opponent has misstated the law or facts, the proper response is to answer or to contest the original forum's jurisdiction. Instead, over a month after being served with the claim, Waveland expressly agreed to submit the dispute to the Authority for arbitration.

It is not clear the statements Waveland characterizes as "blatant trickery" are either fraudulent or misrepresentations. For example, the Tommerups state that "DBSI and FOR 1031 were ... interchangeable," noting that a DBSI bankruptcy trustee has characterized FOR 1031 as a DBSI affiliate. Dkt # 7, 25–27.[2] Similarly, the parties continue to dispute whether the tenant-in-common interests at issue are securities or whether they are real estate interests. These legal and factual disputes over the characterization of the investments undermines Waveland's allegation the statements amounted to fraudulent misrepresentations.

Finally, throughout the Statement of Claim, the Tommerups represent that Day's recommendations, representations, and failure to disclose risk information concerning the investments (and Waveland's failure to control and supervise Day) prompted them to purchase the investments, regardless of who was listed as the broker. E.g. dkt # 5–2, 38, 48, 50, 57. Waveland's emphasis on the occasional use of the word "sale" puts too fine a point for measuring an initial pleading. The parties disagree about how the issues should be framed. Waveland has not established that the Tommerups' claim constituted fraudulent misrepresentation or that it would be reasonable to rely solely on an opponent's description of a claim in agreeing to submit a dispute to arbitration. The same reasoning applies to Waveland's claim of unilateral mistake.

**b. Waveland agreed to arbitrate the issue of the general arbitrability of this dispute.**

Waveland also argues it has not clearly agreed to arbitrate the issue of arbitrabili-

---

**2.** The acronyms can drive any reader crazy. *See* supra.

ty. Dkt # 8, 5. The Supreme Court has held that courts "should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options,* 514 U.S. at 994, 115 S.Ct. 1920. In *First Options,* First Options sought to compel three parties to arbitrate a dispute. *Id.* at 941, 115 S.Ct. 1920. Only one of the parties had signed an arbitration agreement. *Id.* The other two parties contested that their disputes with First Options were arbitrable, a matter they argued before the arbitration panel. *Id.* The arbitration panel determined their cases were arbitrable, and they appealed. Ultimately, the Supreme Court held that filing a written memorandum objecting to the arbitrators' jurisdiction did not amount to a "clear and unmistakable" willingness to be bound by the arbitrators' determination of whether their dispute was arbitrable. *Id.* at 946, 115 S.Ct. 1920. To the contrary, the Court noted that the parties' forceful objections underscored their unwillingness to permit the arbitrators to decide the dispute. *Id.*

Similarly, in *Gilmore v. Brandt,* 2011 WL 5240421 (Oct. 31, 2011 D.Colo.), Brandt signed an arbitration submission agreement in order to file an answer in the proceedings, but appended a statement reserving his right to challenge the arbitrators' jurisdiction. *Id.* at *2–3. He also raised the same objection in his answer and pre-hearing brief. *Id.* Based on his repeated assertions of his right to challenge the arbitrators' jurisdiction, the district court held that Brandt had not submitted the issue of arbitrability to the arbitration panel. *Id.*

In contrast, in *Bayme v. GroupArgent Securities, LLC, f/k/a Milbank Roy Securities,* 2011 WL 2946718 (July 19, 2011 S.D.N.Y.), the district court found that the defendant's execution of an arbitration submission agreement without any additional reservation of rights constituted

clear and "unmistakable intent to submit the question of arbitrability to the arbitrator." *Id.* at *4. In *Bayme,* Milbank Roy Securities was served with a statement of claim, and a month later, responded with a letter brief to the Authority contesting the Authority's jurisdiction. *Id.* at *1. The Authority denied its request to decline jurisdiction, and Milbank Roy Securities signed an arbitration submission agreement. *Id.* at *4. Like Waveland's Arbitration Submission Agreement, Milbank Roy Securities' agreement was broad, providing in part that the parties "submitted the present matter in controversy, as set form in the attached statement of claim, answers, cross claims, and all related counterclaims ... to arbitration." *Id.* Milbank Roy Securities also filed an answer which included a defense of lack of jurisdiction. *Id.* at *2.

Later, the arbitration panel in *Bayme* agreed it lacked jurisdiction and dismissed the case. *Id.* Bayme filed a petition to vacate the award, arguing that the arbitration panel lacked the authority to determine jurisdiction. *Id.* at *1. The Southern District of New York court disagreed, holding that the broad language of the submission agreement, "encompassing essentially any and all claims that the parties could bring, is substantially similar to an agreement that requires 'any and all' disputes to be submitted to the arbitrator, which has been held to evidence clear and unmistakable intent to submit the arbitrability question to arbitration." *Id.* at *4 (citing *Rafferty v. Xinhua Fin. Ltd.,* 2011 WL 335312 at *5 (Jan. 31, 2011 S.D.N.Y.)) (citing *PaineWebber, Inc. v. Bybyk,* 81 F.3d 1193, 1199–1200 (2d Cir.1996)).

█ The reasoning in *Bayme* is persuasive. Where a party has notice of a specific claim, and agrees to submit all aspects of that dispute to arbitration, yet does not reserve its right to challenge the arbitra-

tors' jurisdiction, it has clearly and unmistakably agreed to arbitrate the general arbitrability of the dispute. Unlike the parties contesting jurisdiction in *First Options,* Waveland signed an arbitration agreement, and unlike the defendant in *Gilmore v. Brandt,* Waveland did not append any statement reserving its right to contest the arbitrators' jurisdiction. Like Milbank Roy Securities in *Bayme,* Waveland signed an agreement with broad language agreeing to submit the entire dispute, including all claims, its answer, and any counterclaims, to arbitration. Waveland did so over a month after receiving notice of the claim, with full notice and opportunity to reasonably investigate the contentions it faced. Unlike a case where an arbitration agreement is signed before a dispute arises, Waveland here had the opportunity before signing the agreement to assess the arbitrability of the dispute at issue. By agreeing to the arbitration, Waveland implicitly agreed the dispute was arbitrable. Waveland participated in the prehearing conference and discovery and, apparently, waited over a year to contest jurisdiction or the arbitrators' jurisdiction to determine jurisdiction.

Waveland may want to renounce its decision to submit this dispute to arbitration, but it cannot now claim that the agreement is void or that it reserved its right to contest arbitrability in the courts.

Waveland has not satisfied the first three elements of the TRO standard—it is not likely to succeed on the merits of its claim, its continued participation in the arbitration does not constitute irreparable harm, and the public interest strongly favors arbitration to which the parties have agreed. The balance of equities in this case do not favor Waveland. Most of the claims it raises can be addressed fully in the arbitration. However, the Authority's General Arbitration Rules do place legal constraints on whether Waveland must arbitrate a dispute that the Court need consider.

## 2. Waveland has not shown that it is likely to succeed on the merits of its claim that the Tommerups are not customers or that the investments at issue are not arbitrable under Rule 12200.

■ It is next necessary to determine if outside legal constraints prohibit arbitration of the issues raised in the complaint. *Mitsubishi Motors Corp.,* 473 U.S. at 628, 105 S.Ct. 3346. In particular, it is necessary to decide whether the Tommerups are customers under Rule 12200. Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

The parties agree that Rule 12200 of the Authority's General Arbitration Rules applies. The Rule states:

Parties must arbitrate a dispute under the Code if:

- Arbitration under the Code is either:

  (1) Required by a written agreement, or

  (2) Requested by the customer;

- The dispute is between a customer and a member or associated person of a member; and

- The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

Rule 12200. Rule 12201 may also apply:

Parties may arbitrate a dispute under the Code if:

- The parties agree in writing to submit the dispute to arbitration under the Code after the dispute arises; and
- The dispute is between a customer and a member, associated person of a member, or other related party; and
- The dispute arises in connection with the business activities of a member or an associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

Under either Rule, the Tommerups must be customers before Waveland is subject to arbitration.

Rule 12100(i) of the Authority's Code of Arbitration Procedure defines "customer" as someone who is not a broker or a dealer. The term "should not be too narrowly construed, nor should the definition upset the reasonable expectations of FINRA members." *Herbert J. Sims & Co. v. Roven*, 548 F.Supp.2d 759, 764 (N.D.Cal. 2008). The 6th Circuit and 11th Circuit have both held that customers of an "associated person" count as customers under Rule 12200. *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 59 (2d Cir.2001); *MONY Sec. Corp. v. Bornstein*, 390 F.3d 1340, 1344 (11th Cir.2004). When Rule 12200 was proposed, the addition of the words "of a member" after the word "customer" were explicitly rejected because it would "narrow the scope of claims that are required to be arbitrated under the Customer Code." *Order Approving Proposed Rule Change to Amend NASD Arbitration Rules for Customer Disputes*, 72 Fed.Reg. 4574, 4579 (2007). The Northern District of California held that a direct relationship with either the member of an associated person is necessary to establish a customer relationship. *Herbert J. Sims & Co.*, 548 F.Supp.2d at 765 (N.D.Cal.2008). A direct relationship with an associated person may be demonstrated through direct communications, advice, or agreements. *Id.* (citing *Brookstreet*, 2002 U.S. Dist. LEXIS 16784, at *25–26).

Waveland has not shown that it would likely succeed on the merits of this issue. The Tommerups allege they relied on the advice and recommendations of Day in making their investment decisions. Day is an associated person, as a registered agent, of Waveland. Whether he was acting within the scope of his authority as an agent of Waveland is not a gateway legal constraint under Rule 12200 that this Court must decide, and Waveland has not shown that the Tommerups never communicated directly with Day. A court is not to rule on the merits of the underlying claims. Waveland has not shown that it is likely to succeed on the merits of its claim that the Tommerups are not customers for the purposes of Rule 12200. It is unlikely to suffer irreparable harm from an arbitration it has agreed to. It can contest arbitrability of the issues in that context.

In its reply, Waveland also argues that the investments at issue are real estate, not securities interests, and thus Waveland cannot be liable for Day's actions. Rule 12200 requires that "[t]he dispute arise[ ] in connection with the business activities of a member or an associated person." By its terms, the rule does not require the business activities to be the member's business activities. Waveland states it could not be held responsible as a control person if the investments are not securities interests, but it cites no law stating that it could not be held liable under another theory. Additionally, the jurisdiction of FINRA is not limited to securities claims. E.g. *Vail v. Securities & Exchange Commn.*, 101 F.3d 37, 39 (5th Cir. 1996); *Jefferson Pilot Sec. Corp. v. Blankenship*, 257 F.Supp.2d 962, 966–67 (N.D.Ohio 2003). Waveland fails to show that it is likely to succeed on the merits of its claim that these investments are not

subject to arbitration. It is unlikely to suffer irreparable harm from an arbitration it has agreed to and may further contest arbitrability of the issues in that context.

Though Waveland sought a temporary restraining order as well as a preliminary injunction, both parties had notice and participated in briefing this issue. Accordingly, the Court is not required to set a preliminary injunction hearing and may decide the preliminary injunction request on the briefs as well. Fed.R.Civ.P. 65. Waveland has not shown that it is likely to succeed on the merits of its claims, that it will be irrevocably harmed if a temporary restraining order is not granted, or that the balance of equities tips in its favor and public policy would favor a temporary restraining order or a preliminary injunction.

IT IS HEREBY ORDERED:

1. In documents filed with the Court, the parties shall use only commonly understood acronyms.

2. The parties must comply with the Local Rules.

3. Waveland's motion for a temporary restraining order and preliminary injunction is DENIED (dkt # 4).

4. Because Defendant received notice and the matter is set for arbitration on January 9, 2012, no further hearing will be set on the request for a preliminary injunction.