NOT FOR PUBLICATION
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

FILED

JUL 1 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

GLOBAL INDUSTRIAL INVESTMENT LIMITED; CHINA FORTUNE LAND DEVELOPMENT CO., LTD.,

Plaintiffs - Appellees,

1955 CAPITAL CHINA FUND GP LLC,

Plaintiff - Appellant,

v.

1955 CAPITAL FUND I GP LLC,

Defendant - Appellant.

No. 23-2662

D.C. No.
4:21-cv-08924-HSG

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Haywood S. Gilliam Jr., District Judge, Presiding

Argued and Submitted June 10, 2024
San Francisco, California

Before: NGUYEN, R. NELSON, and BRESS, Circuit Judges.

We review an order confirming an arbitration award requiring two venture-capital funds, 1955 Capital Fund I GP LLC and 1955 Capital China Fund GP LLC,

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

to dissolve. The arbitrator awarded that relief after Global Industrial Investment Limited (GIIL) and China Fortune Land Development (CFLD), the funds' primary investors, alleged that the funds' general partners breached their fiduciary duty to the point that the funds could not operate according to their purpose. "[T]he sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). Even if there is a better interpretation, the arbitrator's interpretation controls, "however good, bad, or ugly." *Id.* at 573. We have jurisdiction, *see* 28 U.S.C. § 1291, and we affirm.

1. "We review the district court's decision to confirm an arbitration award de novo." *Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 730 (9th Cir. 2006). Our review of the arbitrator's decision, however, is "extremely limited"—we give it a "nearly unparalleled degree of deference." *Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173*, 886 F.2d 1200, 1205, 1209 (9th Cir. 1989) (en banc). Such deference means that we are "bound—under all except the most limited circumstances—to defer to the decision of another, even if we believe that the decision finds the facts and states the law erroneously." *Id.* at 1204. "We must affirm an order to confirm an arbitration award unless it can be vacated . . . as prescribed by the [Federal Arbitration Act (FAA)]." *Schoenduve Corp.*, 442 F.3d at 731.

The FAA allows courts to vacate an award if "the arbitrator[] exceeded [his] powers." 9 U.S.C. § 10(a)(4). But we vacate awards only in "extremely narrow" circumstances where the arbitrator's exercise of authority is "completely irrational" in that it "fails to draw its essence from the agreement." *HayDay Farms, Inc. v. FeeDx Holdings, Inc.*, 55 F.4th 1232, 1241–42 (9th Cir. 2022). An arbitrator's "understanding of [his] scope of authority is entitled to the 'same . . . great deference as [his] determination on the merits.'" *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1178 (9th Cir. 2010) (cleaned up) (quoting *Schoenduve Corp.*, 442 F.3d at 733).

2.      The arbitrator's conclusion that he had authority to order the funds to dissolve "dr[e]w its essence from the agreement" and is binding. *HayDay Farms*, 55 F.4th at 1242. The arbitrator spent several pages interpreting the agreements to determine whether they gave him authority to dissolve the funds under Delaware law and the doctrine of equitable dissolution. He rejected the general partners' "argument that a claim for dissolution conflicts with the [agreements] because neither of the two grounds for dissolution expressly mentioned in the [agreements] has occurred." He explained that the arbitration clause was broad, giving him authority to arbitrate "[a]ny claim . . . of whatever nature . . . relating to this Agreement, including, without limitation, any action or claim based on . . . statute." Since the parties agreed that their agreements would be governed by Delaware law,

the arbitrator's view that Delaware law would also govern his decision on whether he could order the funds to dissolve is (at least) plausible.

His conclusion that Delaware Code title 6, section 17-802 gave him power to order the funds to dissolve is also plausible. That statute allows "the Court of Chancery [to] decree dissolution of a limited partnership whenever it is not reasonably practicable to carry on the business in conformity with the partnership agreement." *Id.* The arbitrator concluded that the authority "without limitation" to resolve "any action or claim based on . . . statute" of "whatever nature" included the ability to do what the Court of Chancery would have had the statutory authority to do—order the funds to dissolve. Put differently, he concluded that the arbitration clause displaced Delaware courts when it gave him authority to resolve all statutory claims that would normally be decided in court. That conclusion is far from "completely irrational." *HayDay Farms*, 55 F.4th at 1241. It therefore binds us. While the arbitrator did not explicitly mention the agreements' term provision in his analysis, he earlier acknowledged this provision, and the logic of his decision covers it.

3. We also defer to the arbitrator's conclusion that ordering the funds to dissolve was the appropriate remedy. To determine whether it was "reasonably practicable to carry on the business in conformity with the partnership agreement," Del. Code Ann. tit. 6, § 17-802, the arbitrator looked to the "purpose stated" in the

agreements and considered the general partners' "ability to achieve that purpose." A prior arbitrator's interpretation of the agreements guided his conclusion that the funds existed to "invest in high-technology companies that expressed a willingness to locate in China" and, more specifically, "in CFLD[']s industrial parks." He then found that the general partners' reckless breaches of their fiduciary duties stopped the partnerships from "[b]eing able to operate as warranted under the [agreements]." This conclusion is at least plausible given the facts as the arbitrator found them.

4.     We also affirm the district court's holding as to who would serve as the funds' liquidator. Under the agreements, "the General Partner shall carry out the duties of the liquidator." The arbitrator recognized this provision, but then interpreted the arbitration clause—which gives him power to "grant any . . . permanent equitable remedy or relief"—as authorizing him to allow GIIL to "appoint a reputable liquidator in its own discretion" absent party agreement, under the circumstances of this case. Here too, the only question is whether the arbitrator based his decision in the agreements' text. Since he did, his interpretation holds, "however good, bad, or ugly." *Oxford Health Plans*, 569 U.S. at 573.

5.     Finally, we hold that GIIL and CFLD were the prevailing parties. Not only did they prevail on their dissolution claim, but, as the arbitrator found, they "also prevailed in respect to their other claims and their defenses."

**AFFIRMED.**